IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Linda A. LEAF, Attorney at Law.†

Supreme Court

*No. 89-2062-D. Submitted on briefs September 6, 1991.—Filed
October 16, 1991.*

(Also reported in 476 N.W.2d 13.)

For the appellant there were briefs by *Charles
Ollivier,* Waukegan, Illinois.

For the Board of Attorneys Professional Responsibility there was a brief by *John W. Roethe,* Edgerton.

PER CURIAM. *Attorney disciplinary proceeding;
attorney's license suspended.*

Attorney Linda Leaf appealed from the referee's

---

†Motion for reconsideration denied.

findings of fact and conclusions of law that she engaged in professional misconduct. She also appealed from the referee's recommendation that the court suspend her license to practice for six months as discipline for that misconduct. The misconduct consisted of Attorney Leaf's entering into business relationships with clients in which she had a conflict of interest without making appropriate disclosure, assisting a nonlawyer in the unauthorized practice of law in respect to her clients, making misrepresentations to a circuit court and to the Board of Attorneys Professional Responsibility (Board) concerning the business relationship between her and the nonlawyer, making misrepresentations to the court concerning communications she had had with a former client in the course of professional representation and failing to cooperate with the Board's investigation of her conduct.

The referee's findings are supported by the evidence in the record and, as they are not clearly erroneous, we adopt them. We reject Attorney Leaf's contention that each of those findings is contrary to the evidence and that the conclusions of misconduct based on those findings are unsupported. Thus, we adopt the referee's conclusions that Attorney Leaf's conduct violated the court's rules governing the professional conduct of attorneys.

By her misconduct, Attorney Leaf violated her basic duty to pursue her clients' interests without regard to her own, as well as a lawyer's fundamental duty of honesty to the courts. Further, she permitted and encouraged her clients to deal with a nonlawyer associate in legal matters for which they had retained her. The seriousness of those violations in the context of the facts before us warrants the six-month license suspension recommended by the referee.

Attorney Leaf was licensed to practice law in Wisconsin in 1975 and practices in Milwaukee. She has not previously been the subject of an attorney disciplinary proceeding. The referee is Attorney Rudolph P. Regez.

Following six days of testimony, including that of four of Attorney Leaf's former clients, the referee found that Attorney Leaf permitted a nonlawyer business associate, Dr. Haynes, to have unsupervised and unrestricted access to her clients and the confidential legal matters she was handling for them, allowed him to act as their principal counselor and advisor, encouraged them to enter into business relationships with him and referred them to him for counseling through a business she, Dr. Haynes and his wife owned. That business was engaged in counseling persons and entering into so-called "life style management contracts" with them, offering to develop a plan for success, with emphasis on financial, social and sexual matters. In exchange, the business would receive 30 percent of all money the persons derived from the personal management plans. Between 1982 and 1986, the business operated from Attorney Leaf's law office or from the suite adjacent to it and at times Dr. Haynes' bills for services were sent out through Attorney Leaf's office.

In her professional relationship with four women clients, Attorney Leaf represented to them that Dr. Haynes was her legal assistant, her assistant or her legal associate, although there was no employer-employee relationship between the two. Attorney Leaf and Dr. Haynes, who has advanced degrees in several fields and is a licensed divorce mediator, engaged in a number of businesses together, including the counseling business. During the time relevant to this proceeding, Dr. Haynes answered Attorney Leaf's law office telephone when her

secretary was absent and for these four clients was their initial contact with her law firm.

The first of these women called Attorney Leaf's office in the fall of 1983 concerning a proposed paternity action and Dr. Haynes answered the telephone. Attorney Leaf undertook to represent the woman and during the ensuing paternity action, Dr. Haynes solicited intimate details from the client about her sexual practices with the alleged father, attempted to give the woman sexual counseling and advised her to perform sexual favors for the father. He also represented to the father and his attorney that he was a qualified mediator and, without having been asked to do so, attempted to mediate the matter.

At one point, when the client was confronted by social service authorities and asked to turn her child over to them, she telephoned Attorney Leaf's office for advice. Dr. Haynes answered the telephone and, without consulting Attorney Leaf, told the woman to surrender the child.

The second client telephoned Attorney Leaf's office in the summer of 1984 seeking advice concerning a contemplated divorce. Attorney Leaf was not in and, after leaving her name and number, the woman received a return call from Dr. Haynes, with whom she discussed the legal matter. Attorney Leaf subsequently referred the woman to the counseling business and Dr. Haynes counseled her concerning personal, sexual and financial matters. He also prepared and obtained from her an unlimited power of attorney and entered into a life style management contract under which he collected a fee of 30 percent of all income she received by virtue of that contract.

Dr. Haynes persuaded this client to have another of Attorney Leaf's clients move into her residence as a

461

roommate. The roommate paid rent directly to the counseling business, which deducted 30 percent as its fee. She also paid the client for baby-sitting and sent the money directly to the counseling business, which deducted 30 percent. Dr. Haynes, without the client's knowledge or consent, paid some of the money to which the client was entitled to Attorney Leaf in partial payment of the client's legal fees. The referee found that Attorney Leaf received a direct financial benefit from all of this client's dealings with the counseling business and Dr. Haynes.

The third woman retained Attorney Leaf in September, 1984 to obtain a divorce. During the divorce action, Dr. Haynes served as her principal advisor and counselor, giving her legal advice concerning setting up residence in Milwaukee county to establish venue. Attorney Leaf referred this client to her counseling business and the client entered into a management contract after Dr. Haynes told her he would establish her in a commercial art business.

The fourth woman contacted Attorney Leaf's office in the summer of 1985 concerning a contemplated divorce. Attorney Leaf was not in and Dr. Haynes returned her call. During the ensuing divorce action, Dr. Haynes gave the client legal advice, including to deduct household expenses from income and to disguise her income so she would not have to account for it in the divorce proceeding. He also spoke directly to the attorney for the client's husband concerning a proposed property settlement and advised the client how to deal with her husband's proposals for property division. He discussed and developed with her financial statements for the divorce, advised her concerning asset valuation and the use of mediation as an alternative to court action and developed a legal strategy in the action itself.

Attorney Leaf referred this client to Dr. Haynes, who attempted to have her enter into a life style management contract. When the client refused, Attorney Leaf intervened and attempted to promote it. The client ultimately terminated her relationship with Dr. Haynes and with Attorney Leaf.

On the basis of these facts, the referee concluded that Dr. Haynes engaged in the unauthorized practice of law and that Attorney Leaf aided him in doing so by permitting, condoning, encouraging and supporting his contact with and counseling of her clients. This, the referee concluded, violated former SCR 20.18(1).[1]

The referee also found that Attorney Leaf joined with Dr. Haynes in actively attempting to develop business affiliations with her clients and referred them to her counseling business to be provided with manager, mentor and motivator services. The referee found that when she referred clients to Dr. Haynes, she told them she was part owner of the counseling business but did not fully disclose her conflict of interest or how her interest in that business might affect the exercise of her professional judgment on her clients' behalf.

The referee then concluded that Attorney Leaf entered into business relationships with clients where her professional judgment was affected by her financial and business interests, promoted her own self interest and compromised her professional judgment by determining that clients needed services, passing judgment on the quality of services offered by her business and recommending them to the clients without offering them alter-

---

[1]SCR 20.18 provided: "**Aiding unauthorized practice of law.** (1) A lawyer may not aid a nonlawyer in the unauthorized practice of law."

The corresponding provision of the Rules of Professional Conduct for Attorneys is SCR 20:5.5(b).

natives for similar services. The referee concluded that Attorney Leaf thereby violated former SCR 20.24(1),[2] as she did not obtain consent of the clients to the business relationships based upon full disclosure of the conflict of interest or how it would affect the independent exercise of her professional judgment on the client's behalf.

In addition to her misconduct in these matters, the referee found that Attorney Leaf made misrepresentations to a court on two occasions. In 1986, she represented a man against whom a former client was seeking an injunction on the ground that he had sexually assaulted her. The former client's attorney moved to disqualify Attorney Leaf in the proceeding on the ground that during the course of her representation of the woman in a divorce action she had provided her counseling services and obtained personal information. Attorney Leaf filed an affidavit in opposition, stating under oath that she never discussed with or counseled the woman on sexual matters and never discussed her personal history with her. The referee found those statements false, misleading and constituting misrepresentation, in violation of former SCR 20.04(4)[3] and SCR

---

[2]SCR 20.24 provides:

**Refusing employment when the interests of the lawyer may impair his or her independent professional judgment.**

(1) Except with the consent of the client after full disclosure, a lawyer may not accept employment if the exercise of his or her professional judgment on behalf of the client will be or reasonably may be affected by his or her own financial, business, property or personal interests.

The corresponding provision of the Rules of Professional Conduct for Attorneys is SCR 20:1.7(b).

[3]SCR 20.04 provided: "**Misconduct.** A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

464

20.36(1)(e).[4]

In a second matter, in 1985 Attorney Leaf represented a plaintiff in a civil action for damages for sexual misconduct. She attempted to take the deposition of one of the defendants and appeared at that deposition with Dr. Haynes, who began to conduct the questioning. The defendant's attorney objected to Dr. Haynes' conducting the deposition and a hearing on the motion to compel the deposition was subsequently held. At that hearing, Attorney Leaf told the court that Dr. Haynes was a legal assistant with her law office and a member of her staff and as such was bound by the same attorney-client confidentiality as she was. In fact, Dr. Haynes was not an employee of Attorney Leaf's law firm and the referee concluded that her statement to the court was false and misleading and constituted misrepresentation, in violation of former SCR 20.04(4) and SCR 20.36(1)(e).

The referee also found that Attorney Leaf made a misrepresentation to the Board concerning Dr. Haynes in the course of its investigation of her conduct. In 1986, the Board's investigator asked her to explain the capacity in which Dr. Haynes was employed by her law firm. In response, Attorney Leaf stated that Dr. Haynes was not an employee and never had been. She failed to inform the Board, however, of the status Dr. Haynes had with her law firm, which included but was not limited to providing extensive advice and counseling to her clients.

---

The corresponding provision of the Rules of Professional Conduct for Attorneys is SCR 20:8.4(c).

[4]SCR 20.36 provides: "**Representing a client within the bounds of the law.** (1) In his or her representation of a client, a lawyer may not: . . . (e) Knowingly make a false statement of law or fact."

The corresponding provision of the Rules of Professional Conduct for Attorneys is SCR 20:3.3(1).

Attorney Leaf also failed to tell the Board that she represented to her clients that Dr. Haynes was her associate, assistant or legal assistant or that she had represented to a court that he was a legal assistant with her office, was on her staff and was bound by the duty of confidentiality and was entitled to take depositions. Further, she did not disclose to the Board that Dr. Haynes had extensive contact with some of her clients and often served as their basic counselor and advisor during legal proceedings.

The referee concluded that Attorney Leaf's response to the Board's inquiry concerning Dr. Haynes' connection with her law firm did not fully and fairly disclose all facts and circumstances and constituted a misrepresentation, in violation of SCR 22.07(2).[5]

Lastly, the referee concluded that Attorney Leaf failed to cooperate with the Board during the course of its investigation by failing to answer questions and provide documents requested in the course of that investigation. She made no response to the Board's letter of January 26, 1989 requesting information within 20 days, did not provide information requested in the Board's second response and refused to provide the information or answer the questions following the Board's third and fourth requests. Moreover, on April 6, 1989, after receiving notice of an investigative meeting by the district professional responsibility committee, Attorney Leaf

---

[5]SCR 22.07 provides:

**Investigation.**

. . .

(2)   During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. . . . Failure to provide information or misrepresentation in a disclosure is misconduct. . . .

unsuccessfully attempted to obtain a stay or a temporary restraining order with regard to that meeting and did not appear. When she finally wrote to the Board in June, 1989, Attorney Leaf did not supply the information requested.

The referee found that during the course of this disciplinary proceeding, Attorney Leaf failed to answer written interrogatories and a demand for production of documents, failed to produce documents the referee ordered her to produce, including tax records of the counseling business, and failed to respond to notices of depositions. He specifically found that Attorney Leaf did not contend that any of the answers to the Board's questions or any of the documents or information sought were protected by the constitutional privilege against self-incrimination. Further, contrary to the referee's order excluding Dr. Haynes from all depositions, Attorney Leaf attended scheduled depositions with him and, when counsel for the Board refused to proceed with him present, she left. The referee concluded that Attorney Leaf's conduct violated SCR 22.07(2) and (3).[6]

In his report, the referee explicitly and properly rejected three affirmative defenses Attorney Leaf had asserted: that her failure to respond to the Board was precipitated by an unconstitutionally overbroad order to produce records, that the Board was attempting to pun-

---

[6]SCR 22.07 provides:

**Investigation.**

. . .

(3)   The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

467

ish her for having brought an action in federal court concerning this proceeding and that the doctrine of laches bars the Board from pursuing allegations of misconduct concerning her dealings with the four clients. As to the first two, the referee found there was no constitutional basis; as to the third, he found that the delay in the proceeding was in large part due to Attorney Leaf and was not so prejudicial to her that the allegations of misconduct should be disregarded or dismissed.

In this appeal, Attorney Leaf has presented no meritorious argument in support of her contention that the referee's findings of fact are contrary to the evidence and fail to support his conclusions that she engaged in professional misconduct. Those findings are based in large part on the testimony of Attorney Leaf's four former clients, which was contradicted by Attorney Leaf and Dr. Haynes. The referee found the testimony of the former clients to be credible and we have no reason to disturb that finding.

Regarding the conflict of interest between her and her four clients in the referral to her counseling business, Attorney Leaf took the position that no conflict existed because the clients would not have to pay the business if Dr. Haynes' counseling and advice did not produce a financial benefit for them. In addition, she asserted, there was no showing that the 30 percent fee was excessive. In her view, she was merely attempting to provide clients with what she called "full-service representation" and any potential for conflict was obviated by informing them when she referred them to Dr. Haynes for counseling that she was a part owner of the business. Attorney Leaf apparently fails to comprehend that this falls far short of her professional duty to her clients in the presence of an actual or potential conflict of interest.

We adopt a referee's findings of fact unless they are clearly erroneous and that standard of review is satisfied here. Further, those facts support the referee's conclusions that Attorney Leaf violated the rules of professional conduct in her dealings with clients, the courts and the Board.

In addition to contesting the referee's findings and conclusions, Attorney Leaf attacked the motivation for and the conduct of this disciplinary proceeding. She alleged, among other things, that the referee's exclusion of Dr. Haynes from the depositions scheduled by the Board during its investigation improperly deprived her of what she termed competent advice and assistance of counsel. She defended her failure to comply, with the Board's requests for information by characterizing those requests as "abusive and unconstitutional demands." She also accused the Board of misrepresentation or falsification of records and alleged that the investigator for the district professional responsibility committee had altered deposition transcripts. She contended that the investigator should have been disqualified from investigating the matter because he had represented an opposing party in litigation in which Attorney Leaf had obtained a substantial settlement for her client.

Arguing that the referee erred in assessing the credibility of the testimony of her former clients, Attorney Leaf referred to one of them as "an intentional and vicious perjurer, acting on a plan of racial hatred" in concert with a person she described as "an avowed Nazi." Indeed, it is her contention that this disciplinary proceeding was the product of a racist plot against her and Dr. Haynes.

None of the charges Attorney Leaf has made has been substantiated or has the least merit. The way she has conducted her defense in this proceeding is an

affront to the dignity and decorum due this court, its disciplinary board and the people who carry out the enforcement of the court's rules governing attorney conduct.

Attorney Leaf's professional misconduct is serious and warrants a sanction of commensurate severity. The close ties she maintained and fostered between her law practice and a nonlawyer's conduct of a business unrelated to the law created the potential, if not the actuality, of taking advantage of those who sought her advice and counsel as a legal practitioner. That she used misrepresentation, not only to the clients but also to a court and to the Board, to disguise that connection exacerbates the gravity of her misconduct. Further, by appearing on behalf of a person opposed to a former client while in a position to use against her information gained in the course of the prior representation, Attorney Leaf has demonstrated a failure to appreciate the need for an attorney to avoid acting in the presence of a conflict of interest.

We determine that a six-month suspension of Attorney Leaf's license to practice law is appropriate discipline under the circumstances. We will address the issue of the assessment of costs in this proceeding in a separate order.

IT IS ORDERED that the license of Linda A. Leaf to practice law in Wisconsin is suspended for a period of six months, commencing November 18, 1991.

IT IS FURTHER ORDERED that Linda A. Leaf comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.