**Linda A. LEAF and Andrew B. Haynes, Plaintiffs–Appellants,**

v.

**SUPREME COURT OF the STATE OF WISCONSIN, Board of Attorneys Professional Responsibility, Gerald Sternberg, et al., Defendants–Appellees.**

No. 91–3725.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1992.

Decided Nov. 12, 1992.

Charles L. Ollivier, Waukegan, Ill. (argued), for plaintiffs-appellants.

Warren D. Weinstein, Asst. Atty. Gen. (argued), Wisconsin Dept. of Justice, Madison, Wis., Edward A. Hannan, Godfrey, Trump & Hayes, Brian J. Henderson (argued), Milwaukee, Wis., for defendants-appellees.

Before CUDAHY and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

What promised to be a routine, though unfortunate, attorney disciplinary proceeding has led us into a procedural thicket involving abstention, the *Rooker–Feldman* doctrine, res judicata, and the Eleventh Amendment. We shall now attempt to extricate ourselves, and in so doing, we shall affirm in part and reverse and remand in part the decision below.

## I. BACKGROUND

Linda Leaf is an attorney practicing in Milwaukee. In 1991 the Wisconsin Supreme Court suspended Leaf's license to practice law for six months. *See In re Disciplinary Proceedings Against Leaf,* 164 Wis.2d 458, 476 N.W.2d 13, 13 (1991). The state supreme court took this action after finding Leaf engaged in professional misconduct by "entering into business relationship with clients in which she had a conflict of interest without making appropriate disclosure, assisting a nonlawyer in the unauthorized practice of law," making misrepresentations to the court, and failing to cooperate in its investigation. *Id.*

Leaf's troubles stemmed from her business relationship with Dr. Andrew Haynes. Leaf and Haynes owned a counseling business that developed personal management plans for individuals, with emphasis on financial, social and sexual matters. Clients would enter into a "life style management contract" whereby they paid the business thirty percent of all money the clients derived from the personal management plans. *Id.,* 476 N.W.2d at 14.

Between 1982 and 1986, the business operated from Leaf's law office or from an adjacent suite, and Haynes's bills were at times sent out through Leaf's office. Leaf also represented to four clients that Haynes was her legal assistant, her assistant or her legal associate—though there was no employer-employee relationship between Leaf and Haynes. *Id.*

In 1983 Leaf represented a woman client in a paternity action. During that action, Haynes solicited intimate details from the client about her sexual practices with the alleged father, attempted to give her sexual counseling and advised her to perform sexual favors for the father. Haynes also told the father and his attorney that Haynes was a qualified mediator, and without being asked attempted to mediate the matter. *Id.*

The above episode is but one of the many that prompted the court to suspend Leaf's license. For the complete story, see the state court opinion. Our interest, however, lies more in the process the Wisconsin Supreme Court used in deciding to discipline Leaf. Therefore, a quick review of Wisconsin's disciplinary system is in order.

The Wisconsin Supreme Court has the exclusive authority to regulate the practice of law and to discipline members of the Wisconsin bar for professional mis-

conduct. *State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis.2d 94, 454 N.W.2d 770, 773 (1990). As outlined in Chapter 21 of the Wisconsin Supreme Court Rules, the Board of Attorneys Professional Responsibility ("the Board") serves as an arm of the Wisconsin Supreme Court and assists in the discharge of this duty. The Wisconsin Supreme Court appoints twelve persons to serve on the Board. In turn, the Board appoints, with Wisconsin Supreme Court approval, one member to serve as the professional responsibility administrator. The duties of the administrator are to investigate any possible misconduct or medical incapacity of an attorney and to report his findings and recommendations to the Board. The Wisconsin Supreme Court Rules also provide for a district professional responsibility committee that upon the administrator's request investigates possible misconduct. The administrator reports the results of such investigations to the Board and makes recommendations for disposition in his or her report.

The Board reviews the administrator's recommendations before deciding upon further action. One possible course of action which the Board may take is to file a complaint with the Wisconsin Supreme Court against the attorney. Upon making such complaints, the Board is authorized to retain counsel approved by the Wisconsin Supreme Court to prepare and prosecute formal complaints of attorney misconduct. Once a complaint is filed with the Wisconsin Supreme Court, the Chief Justice must then designate a referee to conduct a hearing on the complaint. After conducting a hearing, the referee files a report stating his or her findings and disposition with the Wisconsin Supreme Court. Either the Board or the attorney may then appeal to the Wisconsin Supreme Court. If appeal is filed, the Wisconsin Supreme Court conducts the appeal under the rules governing civil appeals. Yet, with or without appeal, the Wisconsin Supreme Court reviews the referee's report and determines the appropriate discipline.

Pursuant to the above procedures the administrator and the Board conducted an investigation of Leaf and prosecuted a complaint against Leaf. A referee heard six days of testimony, including four of Leaf's former clients, with regard to the charges against Leaf. After listening to this testimony, the referee found that Leaf aided, permitted, condoned, and encouraged Haynes's unauthorized practice of law; that Leaf did not fully disclose her conflict of interest to clients when referring several clients to Haynes's counseling business in which Leaf had a part ownership; that Leaf had entered into business relationships with clients in which she compromised her professional judgment for her own personal financial and business interests; that Leaf made several misrepresentations to courts and the Board; and that Leaf failed to cooperate with the Board during its investigation. In light of these findings, the referee recommended a six-month suspension.

Leaf appealed the referee's findings and conclusions, and the Supreme Court reviewed and affirmed these findings and conclusions. *See Leaf,* 476 N.W.2d at 15–16. Looking to the evidence regarding Leaf's associations with Haynes and her misrepresentations to the court with regard to these associations, the Wisconsin Supreme Court rejected Leaf's argument that the referee's factual findings were erroneous.

In addition to reviewing and adopting the referee's factual findings, the Wisconsin Supreme Court also reviewed the defenses raised by Leaf. The Court bluntly rejected these defenses as lacking in merit: "None of the charges Attorney Leaf has made has been substantiated or has the least merit. The way she has conducted her defense in this proceeding is an affront to the dignity and decorum due this court, its disciplinary board and the people who carry out the enforcement of the court's rules governing attorney conduct." *Id.,* 476 N.W.2d at 18.

As we will explain, it is the defenses raised in the proceedings before the referee and the Wisconsin Supreme Court which form the basis for Leaf's and Haynes's complaint.

## II. PROCEDURE

Leaf and Haynes first filed their complaint in federal district court in March 1989. In the original complaint Haynes and Leaf alleged three causes of action. In the first count of the complaint Leaf challenges the facial constitutional validity of Wisconsin Supreme Court Rules 21.14 and 22.24. These rules impose confidentiality requirements with regard to communications, papers, files, and transcripts involving investigations and proceedings for attorney misconduct. Moreover, Leaf in this count challenges the rules as applied to her. This count is alleged against the supreme court; the Board; Gerald Sternberg, the Board's administrator; and Roy Korte, a legal assistant for the Board.

In the second count Leaf and Haynes allege, among other things, that the investigation of Leaf with regard to her and Haynes's business relationship was racially motivated; conducted with malicious intent; and arbitrary and capricious. (Haynes is an African–American man and Leaf a caucasian woman). Moreover, this count alleges that the investigation, which requested Leaf to turn over information regarding Haynes, was overly broad. This count is alleged against Charles Stierman, a lawyer and investigator for the Board, and the Defendants named in the first count.

The third count of the complaint was alleged by both Leaf and Haynes against all the above-mentioned Defendants; Brian Henderson, a lawyer; Lynne Levihn, a lawyer; and unknown insurance companies. In this count Leaf and Haynes allege that the Wisconsin Supreme Court, the Board, and the individual Defendants entered into a conspiracy to deprive Plaintiffs' constitutional rights. As an example of such conspiracy, the complaint refers to a lawsuit allegedly filed under the color of state law by Levihn and Henderson against Leaf and Haynes for the alleged purpose of embarrassing and humiliating Plaintiffs.

The Board's investigation of Leaf had already begun at the time in which Leaf and Haynes filed their complaint in federal court. Because of this ongoing investigation and proceeding in the state court, on April 28, 1989, the district court entered an order to abstain and stay proceeding under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The court ordered the case closed for statistical purposes, but the court indicated either party could reopen the case at any time by advising the court and opposing counsel that the party was ready to proceed with the case and that the state proceedings had reached a final resolution.

On September 25, 1991, Plaintiffs moved to reinstate the cause of actions and for leave to file an amended complaint. Then on October 16, 1991, the Wisconsin Supreme Court filed its decision. On October 31, 1991, the district court entered an order reopening the case for the limited purpose of considering Plaintiffs' motion. The court denied the motion to file an amended complaint because no amended complaint had been presented to the court. In addition, the court denied the motion for a temporary restraining order and the motion to reopen the case on the basis that the court lacked subject-matter jurisdiction under the *Rooker–Feldman* doctrine. That same day the court entered a judgment of dismissal.

On November 14, 1991, Plaintiffs filed a motion for reconsideration. The Plaintiffs attached a proposed amended complaint to this motion. The amended complaint attached to Plaintiffs' motion put forth a much more detailed account of the allegations. Plaintiffs also attempted to add new parties by naming them on the amended complaint. The proposed amended complaint sets forth seven rather than three counts, some of which detail events that allegedly occurred after the entry of the stay in April 1989.

The first proposed count, like the first count in the original complaint, focuses on the Wisconsin Supreme Court Rules pertaining to the confidential nature of communications and papers in disciplinary matters; the second alleges unconstitutional discovery tactics in the disciplinary proceedings; the third argues that the Board and the Wisconsin Supreme Court violated

Plaintiffs' constitutional rights in refusing to recognize Leaf's constitutional challenges to their procedures; the fourth alleges that the Wisconsin Supreme Court and the Board have an unconstitutional policy and procedure in investigating attorneys for discipline; the fifth alleges various persons used their enforcement and investigative authority while acting under the color of law in order to harass the Plaintiffs because of their race and gender; the sixth alleges a conspiracy between numerous individual Defendants and certain members of the Wisconsin Supreme Court to deprive the Plaintiffs of constitutional rights for reasons of race and gender; and the seventh alleges that various Defendants failed to put an end to this alleged conspiracy.

On November 15, 1991, the district court denied the motion for reconsideration indicating that it should have dismissed the case in the first instance under *Younger v. Harris* and reiterating that it lacked subject-matter jurisdiction under the *Rooker–Feldman* doctrine. Although not mentioning the amended complaint, the district court's denial implicitly rejected the amended complaint. Plaintiffs appealed the district court judgment on November 25, 1991.

## III. ANALYSIS

█ The debate in this case focuses on whether the judgment entered in the disciplinary proceedings against Leaf preclude Leaf and Haynes from bringing forth the claims raised in their original and amended complaints in federal district court. As the district court's decision to dismiss for lack of subject-matter jurisdiction was a legal determination, we review this dismissal *de novo*.

### A. The Amended Complaint

█ The district judge never directly spoke to the effect of the amended complaint, therefore it is not clear whether the district court rejected the amended complaint because it was too late or whether it looked to the amended complaint and determined that this complaint did not cure the jurisdictional flaws that existed in the origi-

nal complaint. Before proceeding to a discussion of the propriety of the district court's jurisdictional ruling, we must first determine whether we should look to the original or amended complaint in deciphering whether the district court properly dismissed this case for lack of subject-matter jurisdiction.

█ The Plaintiffs argue that we should look to the amended complaint because the district court erred in refusing to accept this complaint. Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Granted, the Plaintiffs do not have as strong a case for such leave after dismissal as if they had put forth an amended complaint before dismissal. Nonetheless, dismissal for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 41(b) is not a decision on the merits and, therefore, constitutes dismissal without prejudice. *See Costello v. United States*, 365 U.S. 265, 285, 81 S.Ct. 534, 544, 5 L.Ed.2d 551 (1961); Fed.R.Civ.P. 12(b)(1), 41(b). And, "[w]hile a court must dismiss a case over which it has no jurisdiction when a fatal defect appears, leave to amend defective allegations of subject matter jurisdiction should be freely given." *Watkins v. Lujan*, 922 F.2d 261, 264 (5th Cir.1991). As such, we will look to both the original and the proposed amended complaint in determining whether the district court properly dismissed this case for lack of subject-matter jurisdiction.

### B. Abstention

█ The Defendants make several arguments for affirming the district court's dismissal on jurisdictional grounds. One argument is that we should affirm under the abstention doctrine announced in *Younger v. Harris*. However, we cannot affirm on this basis because the abstention doctrine only applies when there is an ongoing state proceeding. The state proceedings terminated before the district court's dismissal and before this decision. Therefore, the time for abstention has expired. *Allee v. Medrano*, 416 U.S. 802, 817, 94 S.Ct. 2191, 2201, 40 L.Ed.2d 566 (1974);

*Greening v. Moran,* 953 F.2d 301, 305 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 77, 121 L.Ed.2d 42 (1992).

### C. Rooker–Feldman

Now that we have a state judgment, the question moves from what effect state proceedings have on the claims in federal court to what effect the state judgment has on these federal claims.

### 1. *The Doctrine*

█ In a pair of cases known now as *Rooker–Feldman,* the United States Supreme Court declared that federal district courts do not have jurisdiction to review or modify a judgment of a state's highest court. As the Court said in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), "The jurisdiction possessed by the District Courts is strictly original." *Id.* at 416, 44 S.Ct. at 150. In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court refined its earlier statement saying that district courts have no jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege · that the state court's action was unconstitutional." *Id.* at 486, 103 S.Ct. at 1317.

█ A district court, however, may have jurisdiction when the litigant's challenge is not directed at a state court's judicial proceedings but rather involves a state court's administrative, legislative, or ministerial actions. The facts of *Feldman* illustrate this difference.

In *Feldman,* a Maryland attorney sought admission to the District Court of Columbia Bar. When the Committee on Admissions of the District of Columbia Bar ("Committee") denied Feldman's admission, Feldman petitioned the District of Columbia Court of Appeals. The court upheld the Committee's denial. Thereafter, Feldman took his case to federal district court. Feldman sought a declaration that the D.C. Court of Appeals and the Committee violated the Fifth Amendment and the Sherman Act, and also an injunction granting him admission to the bar. *Id.* at 465–69, 103 S.Ct. at 1305–08.

The district court dismissed Feldman's suit on the ground that it lacked subject-matter jurisdiction. The court found that the D.C. Court of Appeals' order denying Feldman's petition was a judicial act. The D.C. Court of Appeals, moreover, is treated under 28 U.S.C. § 1257(b) as the highest court of a state, with its final judgments or decrees directly reviewable by the Supreme Court. *Feldman,* 460 U.S. at 464, 103 S.Ct. at 1305. The district court, therefore, felt it had no authority to review "an order of a jurisdiction's highest court." *Id.* at 470, 103 S.Ct. at 1308. The Supreme Court agreed that a district court has no authority to review a final judgment of a state court in judicial proceeding, *Id.* at 482, 103 S.Ct. at 1314, but disagreed that Feldman's complaint was limited to the D.C. Court of Appeals' judicial proceeding.

█ A judicial proceeding, the Court explained, "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Id.* at 477, 103 S.Ct. at 1312 (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)). A legislative proceeding, however, focuses on the future "and changes existing conditions by making a new rule to be applied thereafter." *Id.* (quoting *Prentis,* 211 U.S. at 226, 29 S.Ct. at 69).

In denying Feldman's petition, the D.C. Court of Appeals had engaged in a judicial proceeding, for the court had considered both the application of the rule and the legal validity of that rule. The court had adjudicated and rejected Feldman's claim of a present right of admission to the bar— "the essence of a judicial proceeding." *Id.* 460 U.S. at 481, 103 S.Ct. at 1314. This, however, did not deprive the federal district court of jurisdiction over the entirety of Feldman's claims.

█ The Supreme Court noted that to the extent Feldman "mounted a general challenge to the constitutionality" of the bar rule, the federal district court did have

subject-matter jurisdiction. *Id.* at 483, 103 S.Ct. at 1316. This is so because in promulgating rules regulating the bar, state supreme courts may be acting in a *nonjudicial* capacity. *Id.* at 485, 103 S.Ct. at 1316. A district court in reviewing a bar rule is not, therefore, reviewing the final judgment of a state court—a task delegated by 28 U.S.C. § 1257 to the Supreme Court. In short, federal district courts "have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case." *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317.

The Court did agree, however, that the district court was barred from reviewing Feldman's claim that the D.C. Court of Appeals acted unconstitutionally. This was so because Feldman's allegations were "inextricably intertwined" with the D.C. Court of Appeals' decision in "judicial proceedings" to deny his petition. *Id.* at 486–87, 103 S.Ct. at 1316–17. That being the case, for a district court to consider Feldman's constitutional claims would be tantamount to the district court's reviewing the state-court decision and usurping the Supreme Court's role. "This the district court may not do." *Id.* at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16.

While the Court allowed Feldman to proceed in federal district court on his challenge to the constitutionality of the bar rule, it specifically did not "reach the question of whether the doctrine of res judicata forecloses litigation" on Feldman's constitutional claims. *Id.* at 487–88, 103 S.Ct. at 1317–18.

■ In assessing the Plaintiffs' claims in this case in light of *Rooker–Feldman* we are forced then to ask two questions: 1) Was the disciplinary proceeding before the Wisconsin Supreme Court a judicial proceeding; 2) If so, are Plaintiffs' claims inextricably intertwined with those proceedings so as to make consideration of Plaintiffs' claims an impermissible review of the state judicial proceedings?

### 2. *Judicial Proceeding*

This court does not dispute the district court's characterization of the Wisconsin disciplinary procedure as judicial in nature. The *Leaf* case involved a six-day hearing with four witnesses and an appeal to Wisconsin's highest court. The nature of the claims and defense forced the state court to investigate, declare and enforce liabilities as they stood on present and past facts and under laws already in existence. *See Feldman,* 460 U.S. at 477, 103 S.Ct. at 1312. The state court did not act in a legislative role; it promulgated no new rules. Neither did the court act in an administrative or ministerial role; instead it fully adjudicated and rejected Leaf's claim of a present right. *See Greening v. Moran,* 953 F.2d 301, 305 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 77, 121 L.Ed.2d 42 (1992) (attorney disciplinary proceeding before state supreme court is judicial in nature).

■ We do question, however, the district court's conclusion that *Rooker–Feldman* bars that court from hearing Haynes's claims. The Wisconsin Supreme Court disciplined only Linda Leaf; Andrew Haynes was neither an attorney nor a party to the Wisconsin disciplinary proceedings. Concededly, the Plaintiffs did not strenuously argue the different posture of these two individuals. Nonetheless, the Plaintiffs did argue the following in their April 1989 Brief in Opposition to Defendants' Motion to Dismiss:

> The attorney disciplinary action alleged does not include Plaintiff Haynes, a non-attorney. If there is, in fact, a Wisconsin judicial proceeding to protect federal constitutional rights, it is closed to Haynes, a black man. Therefore, contra to the assertions of Defendants, *Younger* cannot apply to him....

(Opp'n Br. at 3–4.) Moreover, this distinction was again raised by the Plaintiffs in their Memorandum in Support of Motion for Reconsideration. In this memorandum Plaintiffs argued that because Haynes was not a party to the disciplinary proceedings, his claims have not been heard in any fo-

rum. The Plaintiffs reiterated this argument on appeal.

■■■ We find that the district court erred in failing to distinguish between Leaf and Haynes. There is, therefore, no judgment against Haynes. Haynes was not required to utilize state judicial remedies before, or instead of, bringing a Section 1983 action in federal court. *See Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). Rather, Haynes was at liberty to bring federal claims in federal court—a liberty that Haynes exercised. And because there is no state court judgment with respect to Haynes, the district court was not deprived of jurisdiction to proceed on Haynes's federal claims under the *Rooker–Feldman* doctrine. This does not mean, as we explain below, that Haynes's claims are without other jurisdictional problems.

### 3. *Inextricably Intertwined*

■■■ Although we believe the district court erred in dismissing Haynes's claims under the *Rooker–Feldman* doctrine, the district court did not err in dismissing Leaf's claims on this basis. As we mentioned above, a state judgment precludes parties from raising in federal district court claims that were reviewed by the state court or claims that are inextricably intertwined with claims reviewed by the state court.

Leaf in her original and amended complaint attempted to assert constitutional claims under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985. In these complaints Leaf challenges the constitutional validity of Wisconsin Supreme Court Rules related to the disciplinary process; the application of such rules to her proceedings; the motives and tactics of the persons and entities investigating, prosecuting, and reviewing the disciplinary proceedings against her; other unconstitutional acts which were supposedly taken in furtherance of these allegedly wrongful and discriminatory motives; and she alleges that much of this was done as part of a discriminatory conspiracy against her and Haynes.

It is apparent to us by looking at the allegations in both the original and amended complaints that Leaf is essentially attacking the investigative procedures and motives for those procedures taken in the Wisconsin disciplinary action. Granted, Leaf alleges a few acts, such as Henderson and Levihn filing a spurious lawsuit for improper goals, that do not directly relate to the proceedings. Yet, even such incidents are presented as examples of the allegedly discriminatory and wrongful motives of the Board and others involved in Leaf's disciplinary investigation. Not only do these allegations relate to the disciplinary investigation against Leaf, it is clear that similar, if not identical, claims were raised to the Board, the referee, and the Wisconsin Supreme Court.

For example, the Wisconsin Supreme Court in its decision in this case specifically stated that the referee properly rejected Leaf's claims "that her failure to respond to the Board was precipitated by an unconstitutionally overbroad order to produce records, that the Board was attempting to punish her for having brought an action in federal court concerning this proceeding...." *Leaf,* 476 N.W.2d at 17. The state supreme court further stated:

> Attorney Leaf attacked the motivation for and the conduct of this disciplinary proceeding. She alleged, *among other things,* that the referee's exclusion of Dr. Haynes from the depositions scheduled by the Board during its investigation improperly deprived her of what she termed competent advice and assistance of counsel. She defended her failure to comply with the Board's requests for information by characterizing those requests as "abusive and unconstitutional demands." She also accused the Board of misrepresentation or falsification of records and alleged that the investigator for the district professional responsibility committee had altered deposition transcripts. She contended that the investigator should have been disqualified from investigating the matter because he had represented an opposing party in litigation in which Attorney Leaf had obtained a substantial settlement for her client.

Arguing that the referee erred in assessing the credibility of the testimony of her former clients, Attorney Leaf referred to one of them as "an intentional and vicious perjurer, acting on a plan of racial hatred" in concert with a person she described as "an avowed Nazi." Indeed, it is her contention that this disciplinary proceeding was the product of a racist plot against her and Dr. Haynes. *Id.,* 476 N.W.2d at 17–18.

We do not, unfortunately, have the record of the hearing before the Wisconsin referee as it was not made a part of the record on appeal. However, it is apparent from the above summary that Leaf raised the same barrage of claims with regard to an alleged racist plot, unconstitutional investigations, improper motives, and more in the Wisconsin proceedings than she has raised in her complaints filed in district court and which we now review. And, considering the great similarity in the allegations in her complaints before us and in the claims discussed by the Wisconsin Supreme Court, to the extent these two sets of claims are not identical, the claims raised in Leafs original and amended complaints are inextricably intertwined with those raised before and addressed by the Wisconsin Supreme Court. Under *Rooker–Feldman,* therefore, the district court is without jurisdiction to review those claims.

Leaf, of course, disagrees with this assessment of her cause of actions. For example, Leaf argues that based on *Wood v. Orange County,* 715 F.2d 1543, 1546 (11th Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984), there is federal jurisdiction because the referee in the disciplinary proceedings and the Wisconsin Supreme Court did not allow her to fully develop her contentions of unconstitutional conduct. While this proposition has merit when applied to the facts in *Wood,* it does not apply to Leaf.

In *Wood,* the appellants had been represented in criminal prosecutions by state public defenders. To obtain the public defenders' services, the plaintiffs had signed affidavits of insolvency. Those affidavits contained a clause which informed plaintiffs of the possibility that a lien would be imposed against their property for the value of services rendered by the public defender. The clause also contained language stating that by signing the affidavit of insolvency, the plaintiffs waived their right to have notice, counsel, and an opportunity to be heard if the liens were sought.

After the criminal cases were completed, and without notice to plaintiffs, the state court entered liens against the plaintiffs. Almost a year later, when a collection agency came knocking, the plaintiffs first learned of the liens. At that point "the time for filing an appeal had elapsed," and plaintiffs "lacked a reasonable opportunity to appeal the judgment." *Id.* at 1548. It was this deprivation that prompted the *Wood* court to hold *Rooker–Feldman* inapplicable and to hold open the federal court door to the plaintiffs. As the court noted, "The important point is that plaintiffs lacked a reasonable opportunity to raise their [constitutional] claims in the proceedings surrounding entry of the judgment." *Id.*

The same cannot be said for Leaf who was aware of the proceedings against her, who participated in those proceedings, and who had an opportunity to present her constitutional claims in those proceedings. The Wisconsin Supreme Court, contrary to Leaf's contention, did consider her claims but concluded that "[n]one of the charges Attorney Leaf has made has been substantiated or has the least merit." *Leaf,* 476 N.W.2d at 18. There is no requirement that the state court allow a party to fully develop a claim that the state court determines is frivolous and without merit. To the contrary, when a court labels a contention as without merit, it has considered the claim in rendering its ensuing judgment, and a rejection of such a claim becomes part of that judgment.

Leaf also argues that even if her allegations that the various Defendants used their authority in a manner that violated her constitutional rights warrants dismissal under the *Rooker–Feldman* doctrine, the same cannot be said of her allegations that several Wisconsin Supreme Court Rules in

the disciplinary context are facially unconstitutional. As we discussed above, in *Feldman* the Supreme Court distinguished between challenging unconstitutional actions and general challenges to the constitutionality of a state's statutes, rules, and regulations. *Feldman*, 460 U.S. at 483–88, 103 S.Ct. at 1315–18.

In contrast to *Feldman*, Leaf in her amended complaint states that "[t]hroughout the state disciplinary proceeding Leaf attempted to raise the constitutional issues and was refused to be allowed to develop evidence of the constitutional violations, and refused hearing on these issues." We will assume from this admission that Leaf raised her general constitutional attacks in the Wisconsin proceedings. Therefore, Leaf already has a state court judgment on these facial attacks. This means that Leaf's only avenue for federal review is the United States Supreme Court. Accordingly, the district court properly dismissed Leaf's cause of actions for lack of subject-matter jurisdiction.

### D. Res Judicata

▆▆▆▆ Even if Leaf's claims were not barred by the *Rooker–Feldman* doctrine, they would be barred in federal district court by res judicata. As the Supreme Court said in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* at 94, 101 S.Ct. at 414. *See, e.g., Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195 (1877) ("[A] judgment estops not only as to every ground ... actually presented ... but also as to every ground which might have been presented...."); *Gray v. Lacke*, 885 F.2d 399, 404–05 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

▆▆▆▆ Wisconsin's interpretation of res judicata is virtually identical. *See Barbian v. Lindner Bros. Trucking Co.*, 106 Wis.2d 291, 316 N.W.2d 371, 374 (1982); *State v. Better Brite Plating, Inc.*, 160 Wis.2d 809, 466 N.W.2d 239, 245 (Ct.App. 1991). That being the case, a litigant who either fails to raise her constitutional claims in Wisconsin state court or has those claims rejected, may be barred by res judicata from attempting to relitigate those claims in federal court. For it is well settled that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). *See also* 28 U.S.C. § 1738 (full faith and credit statute requires federal courts to respect state judgments); *Allen*, 449 U.S. at 95, 101 S.Ct. at 415 (federal courts accord preclusive effect to issues decided by state courts).

This conclusion finds ample support. In *Feldman*, the Supreme Court "expressly" declined to reach the question of whether res judicata foreclosed litigation on Feldman's claims. *Feldman*, 460 U.S. at 487–88, 103 S.Ct. at 1317–18. In a footnote, however, the Court noted, "By failing to raise his [constitutional] claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court." *Id.* at 484 n. 16, 103 S.Ct. at 1315 n. 16. The Court supported this statement by noting that: 1) State courts are competent to adjudicate federal constitutional claims; 2) A state court should have the first opportunity to consider the constitutionality of a state statute or rule so that it may give the statute a saving construction; and 3) States have an important interest in regulating lawyers. *Id.*

In *Greening v. Moran*, 953 F.2d 301 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 77, 121 L.Ed.2d 42 (1992), we also indicated the appropriateness of res judicata on facts very similar to Leaf's situation. The *Greening* case involved an Illinois lawyer who refused to pay his annual fee to the Attorney Registration and Disciplinary Commission; consequently, the Commission removed Greening from the roll of authorized practitioners. Greening contin-

ued to practice law and was subsequently held in contempt of court by the Illinois Supreme Court. During the pendency of the contempt proceedings, Greening filed a suit against the state supreme court in federal district court under 42 U.S.C. § 1983. The federal district court dismissed the complaint. The Supreme Court also denied Greening's petition for a writ of certiorari to review the state supreme court decision.

Greening appealed to this court the dismissal of his 42 U.S.C. § 1983 suit. In our decision affirming the court below, we noted that res judicata stood as a bar to Greening from attacking the constitutionality of the state rules in federal district court. After all, the Illinois Supreme Court "rejected Greening's constitutional arguments on the merits—and if he withheld from the state tribunal some of the points he makes here, Greening has only himself to blame." *Greening*, 953 F.2d at 305. The same can be said in this case.

Plaintiffs, however, rely on *Ktsanes v. Underwood*, 560 F.2d 790 (7th Cir.1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978), for their proposition that "generalized constitutional challenges to state bar rules are not collateral attacks upon state judicial decisions, and thus, there exists no jurisdictional bar under doctrines of res judicata or collateral estoppel to federal consideration of an attorney's constitutional claims." (Appellants' Br. at 8.) The Plaintiffs' reliance is misplaced.

The *Ktsanes* decision to which Plaintiffs cite is but a brief sequel to *Ktsanes v. Underwood*, 552 F.2d 740 (7th Cir.1977). In that earlier decision, this court faced the question of whether a district court had jurisdiction to hear a case involving a disappointed bar applicant who sought to have declared unconstitutional an Illinois Supreme Court rule governing admission to the bar. We ruled the district court had jurisdiction. *Id.* at 743.

In that case, the attorney had merely petitioned the state supreme court for exemption from the rule. The attorney had neither challenged the rule nor argued the question of the rule's validity before the state supreme court. In effect, he had asked the state court "for ministerial action, not judicial determination." *Id.* Similarly, the "denial of his petition was made by the court in an administrative capacity." *Id.* The state court's denial, therefore, presented no case or controversy and itself "was not appealable to the Supreme Court." *Id.* The attorney, therefore, was not barred access to the federal courts by either res judicata or the *Rooker–Feldman* doctrine.

Four months later in *Ktsanes*, 560 F.2d at 790, the case to which Plaintiffs cite, we denied a petition for rehearing and repeated our earlier holding. We stated that the reason "there existed no jurisdictional bar under the doctrines of *res judicata* or collateral estoppel to federal consideration of plaintiff's constitutional claims [was] because plaintiff's action was not a collateral attack upon a *judicial* decision rendered by the Illinois Supreme Court." *Id.* at 792. The present case, however, does involve a collateral attack upon a judicial decision.

Linda Leaf's claims, therefore, are barred by *Rooker–Feldman* and res judicata. As Andrew Haynes was not a party to the state proceedings, he of course is barred by neither *Rooker–Feldman* nor res judicata.

### E. Haynes's Standing

As a final matter, we now consider whether Haynes was properly dismissed on jurisdictional grounds. We have already explained that Haynes was improperly dismissed under the *Rooker–Feldman* doctrine. This does not mean, however, that Haynes's complaint is without its problems.

Under Article III of the United States Constitution, "only parties with a real interest or stake in the litigation have standing to sue in federal court." *Gora v. Costa*, 971 F.2d 1325, 1328 (7th Cir.1992). We seriously question whether Haynes has standing to raise the claims he alleges in his complaint. Many of Haynes's allegations focus on the allegedly improper motives and investigation tactics in the attorney professional responsibility investiga-

tion against Leaf. Such investigations do not seem to implicate Haynes's privacy interests and/or cause him direct harm. *See generally O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 790, 100 S.Ct. 2467, 2477, 65 L.Ed.2d 506 (1980) (enforcement of valid state regulations against business does not deprive clients of constitutionally protected interests in life, liberty, or property). Nonetheless, Haynes makes at least one allegation which he has standing to argue.

In the original complaint Haynes alleges that Brian Henderson and Lynne Levihn brought a suit against Leaf and him for the sole purpose of embarrassing and humiliating them. In the amended complaint Haynes expands this allegation, saying that this suit was filed under the direction of the Board, a state agency. This expansion sufficiently asserts, for purposes of standing, that this action was taken under the color of state law. Haynes, moreover, may have standing to raise other claims under the amended complaint. However, none of the parties have raised or addressed the issue of Haynes's standing; rather, this court raised the question at oral argument. We, therefore, remand for further proceedings on this issue.

The Defendants also raised the argument to this court that we should dismiss Haynes's action under the Eleventh Amendment. There may, indeed, be some problems with Haynes's claims against some of the Defendants under the Eleventh Amendment, particularly with respect to the Board and the Wisconsin Supreme Court. Since the district court, however, has not yet addressed the application of the Eleventh Amendment to this case and considering that remand is necessary to resolve questions of standing, we will not comment on the Eleventh Amendment's application to this case. Rather, we will give the district court an opportunity to consider this issue on remand.

We further note that there appears at this stage to be some substantive problems with Haynes's claims. Indeed, the allegation that the Justices of the Wisconsin Supreme Court have entered into a racial plot

and conspiracy with others seems, to say the least, to push the bounds of reason and credibility. If the district court finds Haynes's claims as lacking in merit as the Wisconsin Supreme Court found Leaf's claims to be, this may be a prime case for sanctions. At this stage, however, we are only looking to the question of jurisdiction, and we of course leave the question of sanctions to the district court.

## IV. CONCLUSION

For the above reasons, we affirm the dismissal of Leaf's claims on the basis that the district court lacked subject-matter jurisdiction to review her claims, and we reverse and remand the dismissal of Haynes's claims for proceedings consistent with this opinion. Furthermore, we deny Plaintiffs' motion for sanctions. Costs associated with the appeal of Linda Leaf shall be assessed against her; costs associated with the appeal of Andrew Haynes shall be borne by the respective parties.

AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.