*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0313P (6th Cir.)
File Name: 03a0313p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

DENNIS DUBUC,
    *Plaintiff-Appellant,*

    *v.*

MICHIGAN BOARD OF LAW
EXAMINERS, GEORGE
GOOGASIAN, STATE BAR OF
MICHIGAN, and JOHN BERRY,
    *Defendants-Appellees.*

No. 02-1897

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-71193—Bernard A. Friedman, District Judge.

Argued: July 30, 2003

Decided and Filed: September 3, 2003

Before: GILMAN and GIBBONS, Circuit Judges;
JORDAN, District Judge.[*]

---

[*] The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

---

### COUNSEL

**ARGUED:** Robert D. Horvath, Troy, Michigan, for Appellant. Katherine C. Galvin, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, Thomas K. Byerley, Lansing, Michigan, for Appellees. **ON BRIEF:** Robert D. Horvath, Troy, Michigan, for Appellant. Margaret A. Nelson, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, Thomas K. Byerley, Lansing, Michigan, for Appellees.

---

### OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Appellant Dennis Dubuc brought this action against the Michigan Board of Law Examiners (the Board); George Googasian, in his capacity as Chairperson of the Board;[1] the State Bar of Michigan (the Bar); and John Berry, in his capacity as the Executive Director of the Bar. The Board denied Dubuc's application for membership in the Michigan Bar because it found that he had failed to demonstrate that he was a person of good moral character. Dubuc seeks to reapply for membership in the Michigan Bar, and he filed this lawsuit claiming that the rules governing the time of his eligibility to

---

[1] According to the Board and Googasian's brief, Googasian is no longer the chairperson or a member of the Board. Dubuc sued Googasian in his capacity as chairperson of the Board, and he states in his reply brief that, if there is a new chairperson, he will amend his complaint upon remand. The parties have submitted no evidence on this issue, and for purposes of this appeal we accept as true the complaint's allegations, which name Googasian as the chairperson of the Board.

reapply are unconstitutional. He also claims that defendants unconstitutionally use First Amendment activity as grounds for denying applications for admission to the Bar. He seeks declaratory and injunctive relief allowing him to reapply immediately for admission to the Bar and prohibiting defendants from considering First Amendment activity when considering applications for admission to the Bar.

In an oral ruling, the district court *sua sponte* dismissed the case on immunity grounds, and Dubuc appeals. For the following reasons, we affirm in part and reverse in part the district court's dismissal on immunity grounds and remand the case for further proceedings.

## I. BACKGROUND

Dubuc graduated from an accredited law school, passed the February 1998 Michigan Bar examination, and applied for admission to the Michigan Bar. The Bar recommended to the Board that his application be denied because it found that he lacked good moral character, a statutory requirement for admission. *See* M.C.L.A. § 600.934(1). Dubuc exercised his right to challenge the Bar's determination in a *de novo* hearing in front of the Board. On June 9, 2000, the Board issued an opinion denying Dubuc's application. According to its opinion, the Board found that Dubuc had failed to prove that he was a person of good moral character in view of his failure to accept responsibility for his wrongful actions when representing himself in previous lawsuits.

According to his testimony in front of the Board, as reflected in the Board's opinion, Dubuc had been involved in approximately thirty-eight lawsuits in the twenty-five years preceding his Board hearing. He filed one of these lawsuits in Michigan's Livingston County Circuit Court in 1992. In 1993, he moved to disqualify the presiding judge, Judge Daniel Burress. During a hearing on September 27, 1995, Dubuc accused Judge Burress of engaging in a conspiracy

against him. During a hearing on October 6, 1995, Dubuc told Judge Burress that he had filed criminal charges against him for conspiracy, bribery, bribery attempt, and abuse of process. In an affidavit he filed in support of his criminal charges, Dubuc attested that Judge Burress was engaged in a "conspiracy to destroy [him]," obstruction of justice, abuse of process, bribery, and attempted bribery.

Judge Burress ordered Dubuc to pay over $180,000 in sanctions for violating several court orders, and after a bench trial, Judge Burress dismissed Dubuc's lawsuit as frivolous. The Michigan Court of Appeals affirmed Judge Burress's decision to award sanctions and dismiss the lawsuit. *Dubuc v. Green Oak Township*, No. 191293, 1999 WL 33455145 (Mich. Ct. App., Jan. 5, 1999). The Michigan Supreme Court denied Dubuc's application for leave to appeal, 604 N.W.2d 679 (Mich. 1999), and denied his subsequent motion to reconsider, 609 N.W.2d 829 (Mich. 2000). In conjunction with the denial of his motion to reconsider, Justice Corrigan, joined by a majority of the other Michigan Supreme Court justices, issued a statement encouraging the trial court to consider "extraordinary sanctions to deter [Dubuc] from continuing his vexatious tactics that have led to years of abusive litigation." 609 N.W.2d at 829. Among many other things, Justice Corrigan found that Dubuc had engaged in abusive and frivolous tactics to delay the proceedings, including "naming the trial judge as a witness; seeking to depose the judge; accusing the judge of criminal conduct and of conspiring with defense counsel; and threatening to file a complaint with the Judicial Tenure Commission against the judge." *Id.* at 830.

Relying upon the Michigan Supreme Court's decision denying Dubuc's motion to reconsider, the Board found that the issue of whether sanctions were appropriate against Dubuc had been decided against Dubuc and was no longer an issue for the Board to resolve. Dubuc's attorney admitted to the Board that he knew of no facts that would support a

criminal charge against Judge Burress for bribery or conspiracy. Dubuc stated to the Board that he had not intended to accuse Judge Burress of bribery, but that he meant only to accuse Judge Burress of knowing that bribery was occurring and doing nothing to stop it. According to the Board, Dubuc refused to accept responsibility for falsely accusing a judge of criminal actions and persisted in believing that the issues in front of the Board were not his fault. In its opinion, the Board found that his failure to accept responsibility for his actions prevented him from carrying his burden to prove that he was fit to practice law.

Dubuc sought leave to appeal the Board's decision to the Michigan Supreme Court, which declined to grant review. Dubuc then filed a petition for a writ of certiorari with the Supreme Court of the United States, which also declined to grant review. Dubuc then filed this lawsuit.

In his complaint, filed pursuant to 42 U.S.C. § 1983, Dubuc does not challenge the denial of his 1998 application for admission to the Michigan Bar. Instead, Dubuc seeks an injunction ordering defendants to allow him to reapply immediately for admission to the Michigan Bar. In addition, he seeks declaratory and injunctive relief prohibiting defendants from using his alleged First Amendment activities (criticizing a judge) as a basis for denying his second application.

According to his complaint, the Michigan Supreme Court Rules Concerning the State Bar of Michigan (RCSBM) prohibit Dubuc from reapplying for five years from the date the Board denied his initial application. Under the RCSBM, according to Dubuc, if he had acquiesced in the Bar's recommendation and not exercised his right to a *de novo* hearing in front of the Board, he would have been eligible to reapply three years after the Bar's recommendation. Therefore, according to Dubuc, because he challenged the Bar's recommendation he must wait until 2005 to reapply,

while if he had not appealed to the Board he would have been eligible to reapply in 2001. Dubuc claims that "punishing" applicants for exercising their right to challenge the Bar's recommendation violates the First Amendment right to petition the government and the Fourteenth Amendment rights to substantive due process and equal protection. He asserts that the RCSBM are facially unconstitutional in this regard.

In support of his request for an injunction and declaratory judgment prohibiting defendants from considering his alleged First Amendment activities in evaluating his second application, Dubuc advances two claims. First, he asserts that "the practice of law is a profession of advocacy and attorney-advocacy is a quintessential First Amendment activity." Therefore, he argues, Michigan's attorney-licensing procedure, which considers one's "moral character," is a prior restraint on a First Amendment activity and is facially unconstitutional because it lacks adequate procedural safeguards and is too vague.

Second, he claims that in practice defendants consider an applicant's prior First Amendment activity in determining whether an applicant has good moral character. He cites the denial of his first application as one of two "illustrations" that evidence the defendants' practice. As his other example, he alleges that a law school graduate named Stephen Dean was told by a Bar official that he would be denied admission to the Bar because he picketed against his law school over classroom comments by one of his professors regarding the impeachment proceedings of former President Clinton. He contends that denying one's bar application based upon one's protected speech is unconstitutional. He therefore claims that the moral character requirement, as it is being applied, is unconstitutional.

Along with his complaint, which he filed on March 28, 2002, in the United States District Court for the Eastern

District of Michigan, Dubuc filed a motion for a preliminary injunction. Defendants filed answers to the complaint and moved to dismiss for improper venue or, in the alternative, to transfer the case to the Western District of Michigan, where the offices of the Board and Bar are located. The district court scheduled a hearing on Dubuc's motion for a preliminary injunction and defendants' motion relating to venue for June 5, 2002.

Before hearing argument or evidence with regard to the parties' pending motions, the district court at the beginning of the hearing on June 5, 2002, asked the parties to address "the issue of immunity." In their answers, defendants asserted two claims of immunity. They all claimed immunity under the Eleventh Amendment, and the Bar and Berry claimed immunity under the RCSBM, which provide that the staff and committee members of the Bar and the Board are "absolutely immune from suit for conduct arising out of the performance of their duties." The Board and Googasian did not raise the RCSBM's grant of immunity in their answer.

At the conclusion of the parties' arguments, the district court made an oral ruling dismissing the action "based upon the immunity argument." The district court's reasoning is unclear. The district court stated that "[t]here's no reason for me to go into a lot of details."[2] In announcing its ruling, the district court referred to the RCSBM's grant of "absolute immunity" and cited two unpublished district court cases dealing with the Eleventh Amendment, but the district court did not distinguish between the two claims of immunity nor did it specify which defendant was entitled to which type of

---

[2] This court, however, has observed that "[t]his reviewing court, and more importantly, the parties, are much better served when, as is the custom in this circuit, the district court prepares a written opinion explaining its ruling and the reasoning, factual and legal, in support, especially when the ruling disposes of the case in a final judgment." *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617 (6th Cir. 2001).

immunity. The district court also stated that "the *Rooker-Feldman* doctrine probably would apply, too," but the district court explicitly declined to ground its ruling on this issue. Having dismissed the action, the district court denied all pending motions as moot.

Dubuc appeals. He argues that the district court erred in finding defendants immune and asserts that the *Rooker-Feldman* doctrine is inapplicable to bar this lawsuit. Furthermore, he urges this court to consider and grant his motion for a preliminary injunction.

## II. ANALYSIS

### A. Eleventh Amendment immunity

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Absent the state's consent, the judicial power of the United States also does not extend to suits against a state by that state's own citizens, even though this limitation was not made explicit in the Eleventh Amendment. *Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890). In addition to the states themselves, the Eleventh Amendment immunizes departments and agencies of the states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

To determine whether an entity is a state department or agency for purposes of the Eleventh Amendment, the primary issue is whether the state would ultimately be liable for any money judgment against the entity. *Brotherton v. Cleveland*, 173 F.3d 552, 560-61 (6th Cir. 1999). Courts, however, also

look to other factors, such as how state law defines the entity and the degree of control the state maintains over the entity. *Id.* at 561 (declining to decide whether these other factors are relevant to the inquiry).

The parties have not submitted any evidence regarding whether the State of Michigan would be ultimately responsible for any money judgment against the Board or the Bar. The other factors, however, weigh in favor of finding the Board and the Bar immune from this lawsuit. In Michigan, for purposes of promulgating rules relating to Bar membership and determining whether to grant or deny Bar applications, the Board and the Bar are merely extensions of the Michigan Supreme Court. Michigan law provides that the "Michigan Supreme Court has the power to provide for the organization, government, and membership of the State Bar of Michigan, and to adopt rules and regulations concerning . . . the investigation and examination of applicants for admission to the bar." M.C.L.A. § 600.904.

Because they are arms of the Michigan Supreme Court for all purposes relevant to this lawsuit, the Board and the Bar are state agencies immune from this lawsuit under the Eleventh Amendment. *Kish v. Michigan State Bd. of Law Exam'rs*, 999 F. Supp. 958, 964 (E.D. Mich. 1998) (finding that the Board is a judicial agency of the state entitled to Eleventh Amendment immunity); *see also Thiel v. State Bar of Wisconsin*, 94 F.3d 399, 401-02 (7th Cir. 1996) (holding that the State Bar of Wisconsin is a state agency entitled to Eleventh Amendment immunity). Therefore, we affirm the district court's dismissal of the claims against the Board and the Bar.

Defendants Googasian and Berry assert that as state officials they are also immune from this lawsuit under the Eleventh Amendment. In general, the Eleventh Amendment immunizes state officials from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

101 (1984). The Supreme Court, however, recognized an important exception to this general rule in *Ex parte Young*, 209 U.S. 123 (1908), where it held that the Eleventh Amendment does not bar a lawsuit seeking an injunction against a state official prohibiting the state official from enforcing a state statute that allegedly violates the United States Constitution. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting Justice O'Connor's concurring opinion in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Dubuc's complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. He alleges that the Bar admission rules, facially and as currently applied, violate the United States Constitution, and he seeks only injunctive and declaratory relief, not a money judgment or any other retrospective relief. Therefore, neither Googasian nor Berry is entitled to immunity under the Eleventh Amendment pursuant to the "straightforward inquiry" that applies to this issue. *Verizon Maryland*, 535 U.S. at 645 ("Here Verizon sought injunctive and declaratory relief . . . . The prayer for injunctive relief – that state officials be restrained from enforcing an order in contravention of controlling federal law – clearly satisfies our 'straightforward inquiry.'"); *see also Roe # 2 v. Ogden*, 253 F.3d 1225, 1233-34 (10th Cir. 2001) (holding that members of the Colorado State Board of Law Examiners were not entitled to immunity under the Eleventh Amendment from a lawsuit challenging bar admission rules). Importantly, determining whether the *Ex parte Young* doctrine applies does not involve an analysis of the merits of a plaintiff's claims. *Verizon Maryland*, 535 U.S. at 646.

In support of their claim for immunity under the Eleventh Amendment, Googasian and Berry cite *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997). In *Coeur d'Alene*, an Indian tribe sought a declaratory judgment establishing its rights to quiet enjoyment over the submerged lands of Lake Coeur d'Alene, as well as prospective injunctive relief against numerous Idaho state officials to prevent them from exercising the state's asserted regulatory jurisdiction over those submerged lands. *Id.* at 264. A sharply divided Court held that the state officials were immune from this lawsuit under the Eleventh Amendment because the suit was the "functional equivalent of a quiet title action" and "if the Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Id.* at 281, 287. "Under these particular and special circumstances, we find the *Young* exception inapplicable." *Id.* at 287.

Googasian's and Berry's reliance on *Coeur d'Alene* is unavailing because the present lawsuit is not the functional equivalent of a quiet title action that implicates a state's sovereign interest in its lands or waters. In arguing for a broader interpretation of the holding in *Coeur d'Alene*, Googasian and Berry mistakenly cite portions of Justice Kennedy's principal opinion that were not joined by a majority of the Court. Justice Kennedy, in a section of his principal opinion joined only by Chief Justice Rehnquist, advocated adopting a case-by-case balancing test that would narrow the circumstances under which the *Ex Parte Young* doctrine applies. *Id.* at 278. A majority of the Court, however, explicitly rejected this approach. *Id.* at 296 (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment and advocating the retention of the traditional "straightforward inquiry" for determining when the *Ex parte Young* doctrine applies); *id* at 298-99 (Souter, J., dissenting, joined by Stevens, Ginsburg, and Breyer, JJ.). In *Verizon Maryland*, the Court reaffirmed

the traditional "straightforward inquiry" advocated by Justice O'Connor in her concurring opinion in *Coeur d'Alene.* Therefore, the individual defendants are not entitled to Eleventh Amendment immunity from this suit.

### B. Immunity under the RCSBM

According to the RCSBM, "The State Bar staff, the members of the district and standing committees and the members and staff of the Board of Law Examiners are absolutely immune from suit for conduct arising out of the performance of their duties." The district court cited this provision in its oral ruling finding defendants immune from this lawsuit. While this provision may immunize the individual defendants from state law claims, no state law or rule can immunize anyone from liability for violating the United States Constitution. In *Ex parte Young*, the Supreme Court explained the supremacy of federal law over state law:

> If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

209 U.S. 123, 159-60 (1908).

Therefore, the RCSBM do not immunize any defendant from this § 1983 lawsuit alleging ongoing violations of federal law.

## C. The Rooker-Feldman *doctrine*

The district court found that the *Rooker-Feldman* doctrine "probably" bars this lawsuit. We disagree. "The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments." *Verizon Maryland*, 535 U.S. at 644 n. 3.

In *District of Columbia Court of Appeals v. Feldman*, the two plaintiffs were denied permission to sit for the District of Columbia bar exam because one had not graduated from law school and the other had not graduated from an accredited law school. 460 U.S. 462, 465, 470 (1983). Each plaintiff unsuccessfully appealed the bar admission committee's decision to the District of Columbia Court of Appeals. Instead of then seeking review from the Supreme Court, each plaintiff filed a lawsuit in the United States District Court for the District of Columbia, seeking a declaration that the District of Columbia Court of Appeals' decision was unconstitutional and an injunction allowing him to sit for the bar exam. *Id.* at 468-69.

The Supreme Court determined that a district court has no jurisdiction to hear a challenge to a state court's final decision in a bar admission matter. *Id.* at 482. The Court concluded that plaintiffs "should have sought review of the District of Columbia Court of Appeals' judgments in this Court." *Id.* The Court, however, determined that a district court does have jurisdiction to hear "a general challenge to the constitutionality" of a bar admission rule. *Id.* at 483. Therefore, a district court cannot reverse a state court's final decision to deny "*a particular application for admission*," but a district court may resolve a general challenge to the future enforcement of an allegedly unconstitutional bar admission

rule. *Id.* at 484-85 (quoting *Doe v. Pringle*, 550 F.2d 596, 599 (10th Cir. 1976)).[3]

In this lawsuit, Dubuc has explicitly not challenged the denial of his 1998 application. As Dubuc correctly recognizes, his "prior licensing decision is history" and "[n]o outcome in this lawsuit could or would reverse any prior state court judgment." With this lawsuit, Dubuc launches a general attack on the constitutionality of the RCSBM's rule that an unsuccessful applicant must wait longer before reapplying if the applicant sought a *de novo* hearing from the Board regarding his first application. Dubuc also seeks injunctive and declaratory relief prohibiting defendants from using First Amendment activities as a basis for denying admission to the Bar. Because Dubuc does not seek to have the district court overturn the denial of his 1998 application, the *Rooker-Feldman* doctrine is inapplicable to this lawsuit. *See Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir. 2001) ("When the litigant is challenging the constitutionality of a rule that was applied to him, but is not asking to correct or revise the determination that he violated the rule, *Rooker-Feldman* is no obstacle to the maintenance of the suit." (internal quotation marks omitted)).

The Seventh Circuit considered an analogous situation in *Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224 (7th Cir. 1993). The Illinois Judicial Inquiry Board filed charges against Robert Buckley, an Illinois state court justice, for violating a state rule regulating the speech of candidates for judicial office. *Id.* at 226. The Illinois Courts Commission ruled that Buckley had violated the rule in his 1990 judicial campaign, and according to the Illinois state constitution, the

---

[3] In making its decision, the Supreme Court in *Feldman* expressly did not reach the question of whether the doctrine of *res judicata* forecloses plaintiffs' generalized attacks on the constitutionality of the bar admission rules. *Feldman*, 460 U.S. at 487-88.

commission's decision was final because Buckley had no avenue for appeal within the state court system. *Id.*

Buckley filed suit in federal district court, not seeking to overturn the final decision from the Illinois Courts Commission, but instead seeking a declaratory judgment that the state rule regulating the speech of judicial candidates is unconstitutional. The Seventh Circuit held that:

> Justice Buckley's challenge to the constitutionality of Illinois Supreme Court Rule 67(B)(1)(c) does not entail a challenge to the ruling by the Illinois Courts Commission that he violated the rule. It is true that if as in *Leaf v. Supreme Court*, 979 F.2d 589 (7th Cir.1992), Buckley were seeking not only to clear away the rule so that he could run in future judicial elections unimpeded by it but also to obtain relief against the discipline imposed upon him, he would be in effect appealing from the Illinois Courts Commission's judgment (though that would be only a part of what he was doing), which *Rooker-Feldman* forbids him to do. But he is not asking us to expunge the disciplinary finding or do anything else to correct or revise the Commission's judgment. He is not, in short, asking for any relief of the kind an appellant seeks – relief directed against a judgment. Of course that judgment, which by virtue of *Rooker-Feldman* Justice Buckley cannot attack in this suit, might by principles of res judicata bar him from maintaining this suit. But res judicata is a defense, not a limitation on jurisdiction.

*Id.* at 227.

As in *Buckley*, if Dubuc were seeking to obtain relief against the denial of his 1998 application, instead of simply seeking to clear away the allegedly unconstitutional rules so that he can reapply to the Bar in the future unimpeded by these rules, then *Rooker-Feldman* would apply. But Dubuc is not asking the district court to expunge the denial of his

1998 application or do anything else to correct or revise defendants' denial of his 1998 application. Therefore, *Rooker-Feldman* does not bar his lawsuit.

In support of their *Rooker-Feldman* argument, defendants cite *Patmon v. Michigan Supreme Court*, where this court held that the *Rooker-Feldman* doctrine barred an attorney's constitutional challenge to a state court's decision to temporarily suspend him from the practice of law. 224 F.3d 504, 510 (6th Cir. 2000). This court's decision in *Patmon*, however, is distinguishable from the present case because in *Patmon* the plaintiff sought to have the district court, among other things, declare that his rights had been violated, restore his law license, and purge his disciplinary records. *Id.* at 507. Dubuc does not seek a declaration that defendants violated his rights with regard to the denial of his 1998 Bar application, nor does he seek to have the denial of his 1998 application overturned or purged. Instead, the relief he seeks relates only to his rights with regard to reapplying for admission to the Bar. *Cf. Patmon*, 224 F.3d at 506 n. 2 ("Although plaintiff's suspension has run its course, and he was eligible as of April 6, 1998 to seek reinstatement, plaintiff has not done so."). There has been no state court judgment with regard to his rights to reapply for admission to the Bar, and, therefore, Dubuc is not seeking a review of any state court judgment in contravention of the *Rooker-Feldman* doctrine.

### D.  Other grounds upon which to affirm

This lawsuit was filed a little more than two months before the district court dismissed it *sua sponte* on immunity grounds. Defendants had not filed a motion to dismiss on any ground except venue, and the parties had not presented any evidence to the district court. Defendants have not asserted any other ground upon which to affirm the dismissal of this

lawsuit against the individual defendants.[4]  As a general rule, appellate courts do not consider any issue not passed upon below.  *See Singleton v. Wulff*, 428 U.S. 106, 119-20 (1976) (criticizing the Eighth Circuit for addressing the merits of an action that had been dismissed in an early stage of litigation solely on standing grounds).  We therefore leave for resolution by the district court upon remand the issues of claim and issue preclusion, constitutional standing, failure to state a claim upon which relief can be granted, and any other basis upon which this lawsuit may potentially be dismissed in whole or part.

### E.  *Preliminary injunction motion*

Dubuc urges this court to consider the merits of his preliminary injunction motion, which the district court denied as moot.  Because we reverse the district court's decision dismissing the claims against the individual defendants on immunity grounds, we vacate the district court's denial of Dubuc's preliminary injunction motion.

Absent extraordinary circumstances, however, the merits of a preliminary injunction motion should be heard and ruled on by the district court first.  This court generally reviews a district court's decision to deny a motion for a preliminary injunction for an abuse of discretion. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1378 (6th Cir.

---

[4]Dubuc argues in his brief against granting defendants judicial immunity in this case.  The defendants, however, did not assert judicial immunity in their answers to the complaint or their briefs to this court.  In any event, Dubuc is correct that judicial immunity does not apply here because defendants are not judges and do not act in a judicial capacity when enforcing the Bar admission rules that Dubuc challenges in this lawsuit.  *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 736 (1980) (holding that the chief justice of the Virginia Supreme Court was not immune from a lawsuit seeking declaratory and injunctive relief prohibiting the chief justice from enforcing an allegedly unconstitutional rule regulating attorneys).

1995).  In determining whether a district court has abused its discretion in denying a motion for a preliminary injunction, this court reviews a district court's factual findings for clear error and its legal conclusions *de novo*. *Id.*  Because the district court dismissed as moot Dubuc's motion for a preliminary injunction before hearing any evidence or argument as to the merits of the motion, the district court made no factual or legal findings for this court to review.  Moreover, the district court did not exercise any discretion for this court to review for abuse.  We therefore leave for the district court the initial resolution of Dubuc's motion for a preliminary injunction.

### III.

For all these reasons, we affirm the district court's dismissal of the claims against the Board and the Bar, reverse the district court's dismissal of the claims against the individual defendants on immunity grounds, vacate the district court's orders denying as moot Dubuc's motion for a preliminary injunction and defendants' motion regarding venue, and remand for further proceedings consistent with this opinion.