GULF PUBLISHING COMPANY, INC., Plaintiff-Appellant,

v.

Webb LEE, Defendant-Appellee.

No. 81–4263.

United States Court of Appeals, Fifth Circuit.

June 21, 1982.

John C. Ellis, W. Joel Blass, Gulfport, Miss., for plaintiff-appellant.

Joe Sam Owen, Gulfport, Miss., for defendant-appellee.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Alleging a violation of the First and Fourteenth Amendments, Gulf Publishing Co. (Gulf) brought this action against Webb Lee, the Clerk of the Circuit and County courts in Harrison County, Mississippi.[1] Gulf filed suit in response to Lee's refusal to submit to a personal, private interview on his campaign for reelection unless Gulf's reporter read Lee her proposed story before publishing it. Gulf contended that Webb Lee had hindered Gulf in gathering the news by discriminating against it. After a trial, the district court concluded that an incumbent official's refusal to provide an interview concerning his reelection campaign does not constitute state action. Believing that in the absence of state action, there was no federal jurisdiction to hear the case, the district court dismissed the suit for want of subject matter jurisdiction. We agree that the district court lacked jurisdiction over this case, but we reach that conclusion on a different basis. We hold that there is no live case or controversy in this suit, and, on this basis, we affirm the district court's dismissal.

I. Facts

The facts of this case are sharply controverted. The dispute largely boils down to a credibility contest between Webb Lee and one of Gulf's reporters, Laura Myers. We are spared the task of choosing sides in this fracas by the clearly erroneous rule of Fed. R.Civ.P. 52(a); *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). Having reviewed the record carefully, we conclude that the facts found by the district court are not clearly erroneous and thus survive the limited scope of review allowed to a federal appellate court. Thus, we resolve this case on the basis of the facts as they appear in the district court's unreported opinion.

Gulf publishes two daily newspapers in Harrison County, *The Sun*, and *The Daily Herald*. In 1979, Laura Myers, a *Sun* reporter, was researching a story on upcoming local elections. One of the elections involved the race for Circuit Clerk in which Webb Lee sought a fifth consecutive term. To gather material on Lee's bid for reelection, Myers requested a private interview with Lee at his office in the Harrison County Courthouse.

No other reporters, or for that matter, other persons, joined Myers and Lee in his office. Myers began the interview by requesting a copy of Lee's campaign finance report, which Lee freely provided. After answering a few preliminary questions on his record in office, however, Lee informed Myers that he would not answer her questions extemporaneously but would give Myers typed answers to any questions that she might choose to propound. Lee expressed concern that Myers' article in the *Sun* had previously misrepresented his

---

1. Gulf filed suit under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, and alleged jurisdiction under 28 U.S.C. § 1343.

statements. When Myers refused to accept written answers, Lee next told Myers that he would give her an interview only if Myers would allow the interview to be tape recorded and would read the article to him over the phone before publishing it. Myers again refused and tried to reassure Lee that she would not misquote him, but to no avail. With Myers refusing to read her article to Lee before publishing it, and Lee refusing to proceed on any other terms, the interview came to an abrupt end.

Myers' version of the story is somewhat different. Although the district court rejected it, Myers' account is relevant to the chain of subsequent events. Myers claimed that Lee terminated the interview by seizing her reporter's notebook, tearing her notes in half, and stuffing them in his pocket. Myers also claimed that Lee ungraciously banished her from his office and ordered her not to return. Both the *Herald* and the *Sun* published Myers' account of the abortive interview, together with Lee's denial. Lee's attorney then wrote to Barbara Holtzman, another *Sun* reporter, and Laura Myers demanding a retraction of the articles. No retraction was printed, however.

After this incident, neither Laura Myers nor any other *Sun* reporter has ever even asked for another private interview with Lee. Myers, along with other *Sun* reporters, had, however, free access to county records. After this suit was filed, Myers' left the *Sun*'s employ for reasons unrelated to this action.

For his part, Lee has given Myers' successor on the *Sun* copies of prepared statements that Lee provides to the press. Lee has also continued his eighteen-year tradition of holding no press conferences, but so far as the record shows has granted all of the few requests made to him by newspapers for private interviews. No reporter other than Laura Myers has ever been asked to comply with the conditions that Lee imposed upon her.

Shortly after Myers' attempt to interview Lee, Gulf filed this suit, claiming that Lee's conduct had violated Gulf's First and Fourteenth Amendments rights. Gulf sought declaratory and injunctive relief. The district court held that the controversy was between private citizens, and, therefore, the dispute lacked the involvement of the state necessary to trigger constitutional protections. Accordingly, the court dismissed the case, calling the dismissal one for lack of subject matter jurisdiction.

Gulf appeals from this judgment. On appeal, Gulf has abandoned its request for injunctive relief, informing us that it would be content with a judgment declaring the rights of the parties.

## II. Case or Controversy

As we are required to do, we raise *sua sponte* the question whether the suit presents a live case or controversy. *Escobedo v. Estelle*, 655 F.2d 613, 614 (5th Cir. 1981) (per curiam). The Article III requirement of a case or controversy is a fundamental aspect of our jurisdiction. The various and overlapping doctrines springing from the case or controversy requirement— standing, mootness, ripeness—are designed to screen out cases that seek answers to abstract legal questions. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Thus, before we may decide the legal questions posed by Gulf, we must determine whether they are raised by an actual controversy. As in many cases, we apply a blend of ripeness and mootness considerations to this declaratory judgment suit.[2] *See Cuidadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners*, 622 F.2d 807, 815 n.17 (5th Cir. 1980) *cert. denied*, 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981).

---

**2.** The case or controversy inquiry is thrust upon us by Gulf's choice not to request money damages for the alleged First Amendment violation. *See Cruz v. Estelle*, 497 F.2d 496 (5th Cir. 1979) (holding that the case was not moot even though claims for injunctive and declaratory relief were no longer alive, because the plaintiff had requested pecuniary relief). Claims for money damages ordinarily preclude a finding of mootness unless the parties have settled the case. *See* C. Wright, A. Miller, E. Cooper Fed.Prac. & Pro. (1975) § 3533 at 272–73.

■ The events that gave rise to this suit took place nearly three years ago. The record shows that only on one occasion Webb Lee more or less spontaneously announced conditions under which he would give an interview to a specific *Sun* reporter, Laura Myers. The conditions he set then have not been invoked since. In fact, the *Sun* has not requested an interview with Lee since that date, and the reporter who inspired Lee to set the conditions has since left the *Sun* for other, if not greener, pastures. Whether we view the problem as one of mootness or of ripeness, a declaratory judgment has virtually no relevance to the present relations between the *Sun* and Lee. We conclude that no actual, living controversy exists to support the exercise of our jurisdiction.

We are guided by the Supreme Court's decision in *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). In *O'Shea*, civil rights activists alleged that the police, prosecutors, and judges in Cairo, Illinois applied the criminal laws more harshly to blacks than to whites. The plaintiffs sought injunctive and declaratory relief. Although some of the plaintiffs had "actually been defendants in proceedings before petitioners [the officials] and had suffered from the alleged unconstitutional practices," 414 U.S. at 495, 94 S.Ct. at 675, that alone was not sufficient to breathe life into a suit for prospective relief. To create a case or controversy, it was necessary to allege a current adversity between the plaintiffs and the officials over the illegal policies they were asserted to follow. This, the court held, the plaintiffs had failed to do.

The *O'Shea* Court concluded that no case or controversy existed because of two observations. First, no plaintiff was subject to any "continuing adverse effects," *id.* at 496, 94 S.Ct. at 676, from the exposure to the allegedly unconstitutional practices. Second, no plaintiff labored under a "real and immediate threat of repeated injury." *Id.* The threat of repeated injury was lacking because the possibility that plaintiffs would be subjected to allegedly unconstitutional behavior was too contingent. The plaintiffs would suffer exposure to the allegedly illegal conduct only if they violated the law, and were arrested, charged, and tried by the defendant officials.[3] *See Cuidadanos Unidas*, 622 F.2d at 820–21. This possibility was simply too hypothetical to generate a current controversy.

We find the controversy in this case far more hypothetical than the alleged dispute in *O'Shea*. We need not speculate about the degree of adversity between Gulf and Lee; the district court held a full trial, the record of which lays bare the absence of a continuing controversy. The record shows that Gulf sought only one interview with Lee, that Lee imposed his allegedly unconstitutional conditions on only one reporter, that Gulf has never requested a second interview, and Lee has never denied one. This evidence fails to prove that Lee acted pursuant to a general policy. It also fails to show that fundamental rights, or indeed any rights, are imperiled. The evidence establishes at most that Lee's actions were a flare-up of personal antagonism, perhaps directed at Laura Myers alone. One instance of hostility does not authorize us to write a binding essay on constitutional law, however.

To see how lifeless the dispute between Lee and Gulf is, we need only compare it to a case in which we allowed a plaintiff to seek prospective relief when a pattern of defendant's past behavior suggested that allegedly unconstitutional conduct will continue and will affect the plaintiff. *See Cuidadanos Unidos de San Juan v. Hidalgo County Grand Jury Commission, supra.* In *Cuidadanos Unidos*, the plaintiffs challenged a grand jury selection system alleged to result in the underrepresentation of Mexican Americans, the poor, the young, and women. The defendants argued that

---

**3.** The *O'Shea* court also emphasized that the plaintiffs did not challenge the constitutionality of any law under which the defendant officials operated, only the uneven application of valid laws. *O'Shea* is thus distinguishable from cases allowing pre-enforcement challenges to statutes allegedly violating First Amendment rights. *See Fernandes v. Limmer*, 663 F.2d 619 (5th Cir. 1981).

allegations of past discrimination were insufficient to create a live controversy. We rejected this argument, reasoning that "the threat of future inquiry is palpable," 622 F.2d at 820. We noted that the plaintiffs had alleged a ten-year pattern of discrimination under a system that continued to operate essentially unchanged. Under those circumstances, the existence of an actual controversy was far from contingent.

Today's case lies at the opposite end of the spectrum from *Cuidadanos Unidos.* We need not delineate in detail what is the constitutional minimum of a pattern of conduct in this kind of case that creates a continuing controversy; wherever that bottom line is, Gulf's claim falls beneath it. Gulf neither suffers ill-effects now from Lee's conduct nor on this record, lives under a genuine threat of repetition. We find that the dispute between Gulf and Lee lacks sufficient vitality to support a finding of a case or controversy. Accordingly, we affirm the dismissal of this case for want of Article III jurisdiction.

AFFIRMED.