File Name: 06a0076n.06
Filed: January 31, 2006

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 04-1901

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**DENNIS DUBUC,**

      **Plaintiff-Appellant,**

                                **On Appeal from the**
                                **United States District Court**
                                **for the Western District of Michigan**

**v.**

**LINDA V. PARKER, and**
**JOHN BERRY,**

      **Defendants-Appellees,**

**MICHIGAN BOARD OF LAW EXAMINERS,**
**STATE BAR OF MICHIGAN, and**
**GEORGE GOOGASIAN,**

      **Defendants.**

---

**Before:**      **DAUGHTREY** and **MOORE**, Circuit Judges; **ALDRICH**, District Judge[*]

---

    **ALDRICH, J.**  This is a civil rights action, in which plaintiff Dennis Dubuc ("Dubuc") challenges the admissions procedures of Michigan's Board of Law Examiners (BLE), and the decision of the district court for the Western District of Michigan dismissing his complaint as partially moot and entirely without merit.  Dubuc has since achieved the outcome he was seeking.

---

      [*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

The district court's decision is therefore VACATED and the case REMANDED with instructions to dismiss.

## I. Background

Michigan law requires membership in the State Bar of Michigan as a prerequisite to the practice of law within the state. MICH. COMP. LAWS §600.901. The Michigan Supreme Court is tasked with supervision and administration of the State Bar; the Court has delegated this responsibility to the BLE. Besides passage of the substantive portions of the Michigan bar examination, the state requires an applicant for membership in the bar to demonstrate that s/he "is a person of good moral character." MCL § 600.934. Section 600.934 defines "good moral character" by reference to § 338.41, which holds that the phrase "shall be construed to mean the propensity on the part of the person to serve the public in the licensed area in a fair, honest, and open manner." *Id*.

Moreover, the Michigan Supreme Court has promulgated a list of Rules Concerning the State Bar of Michigan, which require an applicant to prove "by clear and convincing evidence that he or she has the current good moral character and general fitness to warrant admission to the bar." Rule 15, § 1(15). Rule 15, § 1(5) establishes a detailed process for the review of applications under this standard[1]. The State Bar's standing committee on character and fitness follows its own Rules of

---

[1]In pertinent part:

(a) [The standing committee on character and fitness] makes a favorable recommendation directly to BLE "when investigation of all past conduct discloses no significant adverse factual information." In all other instances, applicants are referred to a district committee for personal interview[;]

(b) The district committee conducts an informal interview and additional investigation if appropriate, and then makes a written report and recommendation to the standing committee[;]

Procedure, which contain exhaustive lists of "cause[s] for further inquiry" to be "considered when a district or standing committee makes a recommendation," Rule E(3)[2], and "factors" which "may be considered when assigning weight and significance to [an] applicant's prior conduct." Rule E(4)[3].

---

(c) If the standing committee endorses a favorable district committee recommendation, it is transmitted to the BLE. If the standing committee endorses an unfavorable recommendation, the applicant is provided a copy of the report and recommendation and advised of the right to a *de novo* formal hearing. At the conclusion of the standing committee hearing, its report and recommendation are transmitted to the BLE[;]

(d) An applicant is entitled to review by the BLE of any adverse standing committee recommendation. The review is conducted as a *de novo* evidentiary hearing[;]

(e) An applicant may obtain review of an adverse BLE determination by filing a complaint for mandamus with the Michigan Supreme Court to implement its superintending control power over the BLE[.]

RCSBM Rule 15, § 1(5).

[2]These include:

• unlawful conduct[;]
• academic misconduct[;]
• making of false statements, including omissions[;]
• misconduct in employment[;]
• acts involving dishonesty, fraud, deceit, or misrepresentation[;]
• abuse of legal process[;]
• neglect of financial responsibilities[;]
• neglect of professional obligations[;]
• violation of an order of court[;]
• evidence of mental or emotional instability[;]
• evidence of drug or alcohol dependency[;]
• denial of admission to the bar in another jurisdiction on character and fitness grounds[;]
• activities that constitute practicing law without the benefit of licensure[; and]
• disciplinary actions by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction[.]

Rule E(3).

[3]These include:

On September 30, 1997, Dubuc filed an application for admission to the Michigan Bar. His application materials were forwarded, pursuant to BLE procedure, to a district character and fitness committee for review. Said committee issued an unfavorable recommendation. In support of this decision, the committee cited "the Green Oak matter," a series of lawsuits in which Dubuc was found to have filed frivolous litigation, violated court orders, and engaged in the unauthorized practice of law. *See Dubuc v. Green Oak Township*, 312 F.3d 736, 740-43 (6th Cir. 2002)(summarizing case history). Dubuc's conduct in the Green Oak matter resulted in the imposition of $180,000 in sanctions against him. *See Dubuc v. Green Oak Township*, 609 N.W.2d 829, 829-30 (Mich. 2000)(Corrigan, J., concurring)(discussing reasons for sanctions). The committee's report specifically noted the findings of contempt, the unauthorized practice of law, and Dubuc's nondisclosure of a criminal conviction on his application for a license.

As provided by the above-detailed procedure, Dubuc appealed this decision by means of a formal hearing before the BLE's standing committee. The standing committee conducted three days of hearings before upholding the previous unfavorable recommendation. Besides the offenses listed by the district committee, the standing committee also noted Dubuc's unsubstantiated allegations

---

 • the applicant's age at the time of the conduct[;]
• the recency of the conduct[;]
• the seriousness of the conduct[;]
• the reliability of the information concerning the conduct[;]
• the factors underlying the conduct[;]
• the cumulative effect of conduct or information[;]
• the evidence of rehabilitation[;]
• the applicant's positive social contributions since the conduct[;]
• the applicant's candor in the admissions process[;]
• the materiality of any omissions or misrepresentations[;]
• affirmative efforts to rectify situation or prevent a recurrence[; and]
• [the] timeliness of the [applicant's] cooperation with [the] application and investigation process[.]

Rule E(4).

of criminal conduct against the judge and the township's attorney in the Green Oak matter, his filing of frivolous motions to disqualify and attorney grievances, additional instances of his giving legal advice to an unrepresented party, and Dubuc's testimony at the hearing, which the committee found neither "sincere [nor] believable." Joint Appendix at 797.

Dubuc appealed this decision by requesting a hearing before the BLE itself. The BLE conducted a two-day hearing on the matter, and issued an opinion affirming the decision of the standing committee on June 9, 2000. The BLE specifically indicated that, while it did not object to Dubuc's previous filing of thirty-eight lawsuits, it did oppose "the manner in which the litigation was conducted." J.A. 802. The BLE additionally noted that Dubuc's "testimony and demeanor in front of the Board dispelled any notion that the Green Oak case [was] an aberration." J.A. 805. Dubuc filed a motion for rehearing, which the BLE denied.

Dubuc then filed a motion for "superintending control" with the Michigan Supreme Court. This relief was denied, *Dubuc v. State Board of Law Examiners*, 627 N.W.2d 603; 2001 Mich. LEXIS 1015 (Mich. 2001), as was his subsequent petition for *certiorari* to the United States Supreme Court. *Dubuc v. Michigan Board of Law Examiners*, 534 U.S. 954 (2001).

On March 28, 2002, Dubuc filed a federal lawsuit under 42 U.S.C. § 1983, seeking "an injunction ordering defendants to allow him to reapply immediately for admission to the Michigan Bar [and] declaratory and injunctive relief prohibiting defendants from using his alleged First Amendment activities (criticizing a judge) as a basis for denying his second application." *Dubuc v. Michigan Board of Law Examiners*, 342 F.3d 610, 613 (6th Cir. 2003). On June 13, 2002, the district court denied relief against the state on the basis of Eleventh Amendment immunity. The Sixth Circuit affirmed this decision, but remanded to allow Dubuc to proceed against individual state officials. *Id.* at 620.

On remand, venue was transferred to the Western District of Michigan. On March 2, 2004, the BLE chairperson filed a motion for summary judgment and/or judgment on the pleadings. On June 17, 2004, the district court granted this motion. This appeal followed.

While this action was pending in the district court on remand, Dubuc reapplied for admission to the state bar. His application was once again referred to a district character and fitness committee. This time, by means of a report and recommendation issued June 23, 2004, the committee decided in Dubuc's favor. The standing committee endorsed the recommendation on July 7, 2004, and the BLE accepted the favorable decision. On September 8, 2004, Dubuc was admitted to the practice of law in Michigan.

## II. Discussion

Dubuc appeals the district court's denial of his challenge to a previous version of the Rules Concerning the State Bar of Michigan – specifically, Rule 15, §§ 1(17) and 1(18) – on the basis of mootness. The court ruled that the action was moot because the Rules had been amended to remove the challenged provisions. Dubuc also appeals the denial of his as-applied challenge to Michigan's bar admission procedures, on ripeness grounds, and the denial of his facial challenges as meritless. The state opposes Dubuc's claims, and also submits that the matter is now entirely moot, owing to Dubuc's admission to the state bar of Michigan.

The Court reviews "a district court's decision to grant or deny a permanent injunction, including both its factual and legal conclusions, *de novo* when constitutional facts are at issue. All other factual findings are reviewed for clear error." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 387 (6th Cir. 2001), citing *Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 192 (6th Cir. 1997).

We must also consider the intervening facts concerning Dubuc's admission to the bar, as "[t]he standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 64 (1997), citing *Diamond v. Charles*, 476 U.S. 54, 62 (1986). Like the district court, this Court must re-assess whether Dubuc can "show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent. An interest shared generally with the public at large in the proper application of the Constitution and laws will not do." *Id.* (citations omitted).

In accordance with those standards, the appellees are correct in their assertion that the case is now moot. No case or controversy exists now that Dubuc has been granted admission to the Michigan bar. A federal court may not "adjudicate challenges to state measures absent a showing of actual impact on the challenger," *id.* at 48, and Dubuc can no longer make such a showing. Dubuc's current authorization to practice law prevents him from deriving any direct benefit from a ruling in his favor, and the Court is not empowered to act in furtherance of his self-impression as the vindicator of future bar applicants' rights. "The decision to seek review is not to be placed in the hands of concerned bystanders, persons who would seize it as a vehicle for the vindication of value interests." *Id.* at 64-5 (citation omitted).

While Dubuc acknowledges that "he has been admitted to the Bar," Appellant's Brief at 15, and therefore that he "does not require an order to reapply," *id.*, he nonetheless seeks some manner of prospective relief. How this relief is meant to alter Dubuc's "completed injury to his various constitutional interests," *id.*, is unclear. More telling is Dubuc's assertion that "[n]o one *else* should be required to endure the constitutional injury inflicted on him." *Id.* at 13 (emphasis added).

Dubuc attaches great significance to this Court's holding that "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," *Johnson v. Cincinnati*, 310 F.3d 484, 490 (6th Cir. 2002), citing *Deja Vu of Nashville*, 274 F.3d at 387; *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), but he fails to note that this principle only applies to situations in which the government actor retains its ability to renew said practice. Michigan could not retroactively deny Dubuc's bar admission now, even if it wanted to. Thus, Dubuc lacks the "the irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which requires first and foremost "an invasion of a legally protected interest which is concrete and particularized," *id.* (citations omitted). A "particularized" injury requires that the outcome of this case affect Dubuc "in a personal and individual way." *Id.* at 560, n.1. Following his admission to the Michigan bar, it can no longer do so.

The relevant history is replete with instances in which the "psychic satisfaction" to be gained from the redress of past grievances or vindication of rights currently possessed by others has been held "not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998), citing *Allen v. Wright*, 468 U.S. 737, 754-755 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 482-483 (1982). These include numerous cases in which businesses were granted licenses under previously challenged procedures, and attorneys were disciplined under challenged regulations. In all cases, the completion of proceedings mooted the licensee's challenge. *See, e.g,*, *City News and Novelty, Inc. v. City of Waukesha*, 531 U.S. 278 (2001)(mootness ensued from business withdrawing its renewal application and closing); *Berger v. Cuyahoga County Bar Association*, 983 F.2d 718 (6th Cir. 1993)(completion of attorney

disciplinary proceeding caused mootness); *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir. 1997)(business lacked standing to contest licensing scheme once it successfully obtained a license); *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 227 (6th Cir. 1995)(same).

In this context, it bears reiterating that Dubuc is not seeking an award of damages for any particularized injury he may have suffered. His original complaint sought only "an injunction ordering defendants to allow him to reapply immediately for admission to the Michigan Bar [and] declaratory and injunctive relief prohibiting defendants from using his alleged First Amendment activities . . . as a basis for denying his second application," relief which either cannot be granted, or would avail him nothing at this juncture. This case therefore does not submit to application of the general rule that "[c]laims for money damages ordinarily preclude a finding of mootness unless the parties have settled the case." *Gulf Pub. Co. v. Lee*, 679 F.2d 44, 46 n.2 (5th Cir. 1982); *see also Powell v. McCormack*, 395 U.S. 486 (1969).

Finally, a portion of Dubuc's case would be moot even in the absence of his admission to the Michigan bar. This portion consists of his challenge to the disparate waiting period for re-application imposed on applicants who appeal an unfavorable decision by the BLE. The BLE voluntarily amended its procedures to address this discrepancy, and the district court properly held that such action mooted Dubuc's challenge. Because the Court must "apply the law as it is now," *Kremens v. Bartley*, 431 U.S. 119, 129 (1977), citing *Fusari v. Steinberg*, 419 U.S. 379 (1975); *Sosna v. Iowa*, 419 U.S. 393, 402 (1975), it "can no longer declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004). Dubuc can cite no relevant holding to the contrary, and his appeal of the decision on this point is therefore denied.

### III. Conclusion

For the foregoing reasons, the decision of the district court is VACATED and the case REMANDED for further proceedings. On remand, the district court is instructed to dismiss the case on the basis of mootness.