*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0234p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

CAROL METZ, et al.,

*Plaintiffs,*

*v.*

No. 09-3999

UNIZAN BANK, et al.,

*Defendants-Appellees,*

*v.*

DANIEL G. MORRIS,

*Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 05-01510—Donald C. Nugent, District Judge.

Argued: May 31, 2011

Decided and Filed: August 24, 2011

Before: MARTIN, NORRIS, and SILER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Paul W. Flowers, PAUL W. FLOWERS CO., L.P.A., Cleveland, Ohio, for Appellant. Michael E. Mumford, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Paul W. Flowers, PAUL W. FLOWERS CO., L.P.A., Cleveland, Ohio, for Appellant. Michael E. Mumford, Katie M. McVoy, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees.

————————————

**OPINION**

————————————

SILER, Circuit Judge.  Defendant Fifth Third Bank, N.A. ("Fifth Third") sought sanctions against attorney Daniel G. Morris because, after Fifth Third had been dismissed with prejudice, Morris filed a complaint that reasserted claims against Fifth Third that were identical to previously dismissed claims.  Morris never responded to Fifth Third's request for sanctions, and the district court sanctioned Morris under its inherent powers.  Morris now appeals.  For the reasons stated below, we **AFFIRM** the district court's imposition of sanctions.

I.

In 2005, Plaintiffs Carol Metz and others filed a putative class action against 55 banks, including Fifth Third.  The claims arose out of a Ponzi scheme orchestrated by James Carpenter involving bogus promissory notes issued by Lomas de la Barra Development Corp. ("Lomas") and Serengeti Diamonds U.S.A., Inc. ("Serengeti").

Five months later, Morris filed a motion to intervene on behalf of his clients, the Floyds and the Blairs.  Attached to the motion was a complaint that was similar to Metz's complaint, except it was also premised on promissory notes issued by International Real Estate Investment Group, LTD ("International") and Rawhide Select, Inc. ("Rawhide").  The district court granted the motion to intervene, but later clarified that intervention was only permitted with respect to claims involving Lomas and Serengeti, not with respect to claims involving International and Rawhide.  The Blairs were prohibited from intervening because their claims related only to Rawhide.

The case then proceeded for three years, with Morris actively participating in the case.  After resolving multiple motions to dismiss, the district court dismissed Fifth Third with prejudice in May 2008.  But that did not end the participation of Fifth Third in this case.  In February 2009, Morris filed an intervenors' complaint on behalf of the Floyds against Fifth Third and three other banks.  The complaint was virtually identical

to the complaint attached to their motion to intervene over three years earlier and included claims premised on Rawhide and International that the court previously disallowed. Also, a claim was added for aiding and abetting Carpenter's tortious conduct.

In March 2009, Fifth Third filed a motion to strike or dismiss the intervenors' complaint. Fifth Third also requested that the court sanction Morris for reasserting claims that had already been dismissed. Specifically, it requested that the court use its inherent powers to sanction Morris in an amount sufficient to pay its fees and expenses for having to file the motion to strike.

Morris did not respond to Fifth Third's motion. Instead, in April 2009, he filed a motion to voluntarily dismiss the claims without prejudice. Fifth Third filed an opposition, arguing that the claims should be dismissed with prejudice. Fifth Third again requested that the court sanction Morris for requiring it to defend against the intervenors' complaint. It also noted that its previous request for sanctions should be granted as unopposed.

With a trial date approaching, Fifth Third's counsel attended a pretrial status conference. Morris, however, did not attend. Following the conference, the district court granted the motion to dismiss filed by Morris, but it dismissed the claims with prejudice.

In May 2009, the district court granted Fifth Third's unopposed request for sanctions. Citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-47 (1991), the district court first noted that it had the inherent power to sanction "where a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." It next found that Morris was aware of the prior rulings in this case and "therefore had no legal basis for re-filing claims against Fifth Third that were in every way identical to claims previously dismissed in this litigation." It also noted that Morris had "several opportunities to voluntarily dismiss Fifth Third," and by not doing so, "forced the unnecessary expenditure of time and resources to defend against frivolous and baseless claims."

Morris filed a motion for reconsideration of the sanctions, explaining that he did not intend to reassert previously dismissed claims against Fifth Third. Instead, he claimed he was merely responding to Unizan's assertion that it would not respond to his discovery requests because, although Morris had attached the intervenors' complaint to the Floyds' motion to intervene in 2005, he never formally filed it after the district court granted the motion. The district court denied Morris's motion to reconsider, reasoning that Morris never responded to the sanctions request nor explained why he did not respond.

After a hearing on the amount of fees to be awarded, the district court sanctioned Morris in the amount of $8,702.13. Morris appealed, raising the following challenges: (1) the record does not support a finding of bad faith; (2) the district court failed to make a specific finding of bad faith; (3) the district court's use of its inherent authority deprived him of the procedural protections of Rule 11; (4) the district court denied him due process; and (5) the amount of fees awarded was excessive.

## II.

We review a district court's imposition of sanctions under its inherent powers for abuse of discretion. *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010).

## A.

A court may assess attorney's fees under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers*, 501 U.S. at 45-46 (internal quotation marks omitted), or when the conduct is "tantamount to bad faith," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). We apply a three-part test from *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997), to determine whether the district court's imposition of sanctions under the bad faith standard was proper. *BDT Prods.*, 602 F.3d at 752. This test requires the district court to find "[1] that 'the claims advanced were meritless, [2] that counsel knew or

should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *Id.* (quoting *Big Yank*, 125 F.3d at 313).

"[T]he mere fact that an action is without merit does not amount to bad faith." *Id.* at 753 (internal quotation marks omitted). Rather, "the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* Examples of "something more" include: a finding that the plaintiff filed the suit "for purposes of harassment or delay, or for other improper reasons," *Big Yank*, 125 F.3d at 314, a finding that the plaintiff filed "a meritless lawsuit and [withheld] material evidence in support of a claim," *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 523 n.18 (6th Cir. 2002), or a finding that a party was "delaying or disrupting the litigation" or "hampering enforcement of a court order," *Chambers*, 501 U.S. at 46. *See BDT Prods.*, 602 F.3d at 753-54.

Here, the claims advanced in the intervenors' complaint were clearly meritless against Fifth Third because the district court had previously dismissed identical claims with prejudice. Morris had been involved in the case for over three years and was aware of the court's prior rulings. He therefore knew or should have known filing the intervenors' complaint was meritless.

Morris's actions after filing the complaint, which was filed in disregard of the court's previous orders, demonstrate that he filed it with an improper purpose. As the district court found, "Morris had several opportunities to voluntarily dismiss Fifth Third after the Intervening Complaint was filed, but he failed to do so." Even if Morris could show a proper purpose with respect to Unizan, once he learned that the other banks were concerned that they were injected back into a case from which they were previously dismissed, he should have taken immediate action to quell those fears. *See BDT Prods.*, 602 F.3d at 753 n.6 ("[A]ttorneys have a responsibility to halt litigation *whenever* they realize that they are pursuing a meritless suit."). Instead, he placed the burden on the banks to file motions to dismiss. After seeing that Fifth Third had filed a motion to dismiss, he did not file a response stating that he did not oppose it. On the contrary, he did nothing with respect to that motion and filed a separate motion seeking to voluntarily

dismiss the complaint *without prejudice*. The latter filing further necessitated a response from Fifth Third. In addition, by keeping Fifth Third in the case, Morris forced Fifth Third to attend a pretrial conference, which Morris himself failed to attend. The district court was therefore correct that "Morris' conduct necessitated Fifth Third's on-going participation in a lawsuit from which it had already been dismissed with prejudice" and "forced the unnecessary expenditure of time and resources to defend against frivolous and baseless claims." These findings support a determination that Morris acted with an improper purpose. *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006) (upholding sanctions where the attorney's "actions were taken, at the very least, in the face of an obvious risk that he was increasing the work on the other party without advancing the litigation").

### B.

Morris argues that the district court's imposition of sanctions was improper because it never made a specific finding of "bad faith" or "conduct tantamount to 'bad faith.'"

We have "upheld a district court's sanctions in exercise of its inherent authority despite objections that the orders imposing the sanctions lacked specific findings of bad faith." *First Bank of Marietta*, 307 F.3d at 519. Indeed, we may affirm without an "express finding of willfulness, bad faith or recklessness . . . if 'the record sets forth sufficient evidence to support [the district court's] decision.'" *Red Carpet Studios*, 465 F.3d at 647 n.2 (quoting *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985)).

Here, while the district court did not make an explicit finding that "Morris acted in bad faith," it cited the applicable bad faith standard from *Chambers* and then proceeded to set forth Morris's conduct that met the standard. As explained above, the record sets forth sufficient evidence to support the district court's decision. Thus, the district court's failure to make a specific finding does not mandate reversal.

C.

Morris next argues that Fifth Third improperly invoked the court's inherent authority to avoid the procedural safeguards found in Federal Rule of Civil Procedure 11, such as the separate motion requirement and the 21-day safe harbor. Inherent power sanctions, according to Morris, are not appropriate if Rule 11 applies.

One problem for Morris is that his failure to respond to Fifth Third's sanctions requests left the district court with few options. Certainly, parties should be given notice of the possibility of inherent power sanctions so that they "can present to the district court those rules or statutes that may be more appropriate." *First Bank of Marietta*, 307 F.3d at 516. If Morris believed that Fifth Third should have invoked Rule 11 instead of the court's inherent authority, he should have responded to Fifth Third's requests and presented this argument to the district court before it awarded sanctions.

In any event, Morris is incorrect that inherent power sanctions are improper if Rule 11 also applies. The Supreme Court has indicated in multiple cases that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 49. Although a court "ordinarily should rely on the Rules rather than the inherent power," *id.* at 50, we read *Chambers* "broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes," *First Bank of Marietta*, 307 F.3d at 514.

That inherent power sanctions may be proper, even if Rule 11 applies, does not mean that Rule 11 is not pertinent to our inquiry. *See id.* at 516. In both *Chambers* and *First Bank of Marietta*, inherent power sanctions were upheld even though the misconduct was also sanctionable under Rule 11. But in both of these cases, some of the misconduct was covered by Rule 11, while other misconduct was not. *Chambers*, 501 U.S. at 50-51 (filing "false and frivolous pleadings" was sanctionable under Rule 11, but much of the party's conduct throughout the litigation "was beyond the reach of the Rules"); *First Bank of Marietta*, 307 F.3d at 518 (filing a meritless claim was

sanctionable under Rule 11, but "noncompliance with discovery orders, delays in providing discovery and withholding material evidence" fell outside Rule 11).

Similarly, some of Morris's misconduct in this case went beyond Rule 11. Rule 11 does not directly cover the disregard of court orders, and the injection of Fifth Third back into the case was in disregard of the court's order dismissing it with prejudice and in disregard of the court's order disallowing claims involving Rawhide and International. In addition, Morris failed to respond to Fifth Third's motion or attend a pretrial conference, and Rule 11 does not apply to inaction that needlessly delays the entire proceedings. Under this court's broad reading of *Chambers*, the district court could sanction Morris under its inherent authority, even though Rule 11 also applied. *See First Bank of Marietta*, 307 F.3d at 514.

### D.

Morris further argues that his due process rights were violated because he did not receive fair notice and a hearing.

"In this circuit, there is no requirement that a full evidentiary hearing be held before imposing sanctions." *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 822 (6th Cir. 2000). What is required is that an attorney receive "fair notice and an *opportunity* for a hearing on the record." *Roadway Express*, 447 U.S. at 767 (emphasis added).

Morris had fair notice of the possibility of inherent power sanctions from Fifth Third's motion. Contrary to Morris's argument that the request was buried in the back of Fifth Third's brief, it was in fact on page one of its motion, page one of its brief, and the supporting argument was found on pages 17-18 of its brief. A cursory review of the motion and brief, which at a minimum Morris is expected to do with respect to motions seeking to dismiss his clients' claims, would have revealed the request for sanctions. Moreover, Fifth Third's response to his motion to dismiss without prejudice should have further alerted him to the sanctions request.

Morris cannot complain about not having a hearing because he never requested a hearing before the sanctions were granted, nor did he tender any sort of response to Fifth Third's requests. The district court gave Morris ample time to respond or otherwise make amends, waiting two months before awarding sanctions. It also conducted an evidentiary hearing on the amount of the reasonable attorneys' fees. Hence, Morris's due process rights were not violated.

## E.

Morris's final argument is that the sanctions were excessive because Fifth Third could have requested dismissal in a single-paragraph motion. As an initial matter, this argument ignores that Morris's conduct forced Fifth Third's attorneys to file a response to a motion to dismiss without prejudice and to attend a pretrial conference. Both required Fifth Third to incur legal fees. Further, Fifth Third's attorneys are entitled to diligently represent their client and there is no indication that the attorneys' fees awarded were unreasonable. *See First Bank of Marietta*, 307 F.3d at 526. All three attorneys who worked on the matter testified at an evidentiary hearing. An itemized summary of Fifth Third's attorneys' fees and costs was submitted to the district court. Morris did not rebut this evidence. Accordingly, we reject Morris's argument that the amount awarded was excessive.

**AFFIRMED.**