NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0570n.06

Nos. 10-2130, 10-2443

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DENNIS DUBUC,<br>CAROL DUBUC, | ) ) ) | **FILED**<br>***Jun 04, 2012***<br>LEONARD GREEN, Clerk |
| Plaintiffs-Appellants (10-2130), | ) ) | |
| EDWARD J. CHRISTENSEN, | ) ) ) | On Appeal from the United States District Court for the Eastern District of Michigan |
| Appellant (10-2443), | ) ) | |
| v. | ) ) | |
| GREEN OAK TOWNSHIP, et al., | ) ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS, SUHRHEINRICH, and COOK, Circuit Judges.

BOGGS, Circuit Judge. In this appeal, three parties—Dennis Dubuc, his wife, Carol (referred to, collectively, hereafter simply as "Dubuc"), and their trial attorney, Edward Christensen—appeal sanctions imposed on them by the district court. We affirm the district court's sanctions of all parties.

*Factual and Procedural History*

Dennis Dubuc has a long history of instigating lawsuits against his township. As chronicled in an opinion from the Michigan Supreme Court, Dubuc filed "at least ten lawsuits" between 1985

and 2000, when the opinion was written. *Dubuc v. Green Oak Twp.*, 609 N.W.2d 829, 829–30 (Mich. 2000) (Corrigan, J., concurring). Since that time, Dubuc has appeared as an appellant before the Sixth Circuit six times.[1] Most of these suits and appeals have dealt with land use.

In the instant lawsuit, Dubuc sued the township for violation of his procedural due-process rights, arguing that the township unconstitutionally deprived him of the opportunity to continue a "nonconforming, legal use" of the property. Dubuc alleged that manufacturing, retail sales, and commercial indoor and outdoor storage had been permitted on the property for over 40 years. Dubuc alleged that in March 2008 the Township wrongfully limited the legal nonconforming use to "commercial indoor storage."

On August 28, 2008, Dubuc sued the Township, as well as a number of its officials. He requested declaratory relief and damages under 42 U.S.C. § 1983. He alleged that he was damaged by the Township's limitation on his legal nonconforming use because a number of businesses had offered to rent, lease, or buy the subject property, but withdrew their offers after the township refused to allow outdoor storage or manufacturing. The limitation, Dubuc argued, reduced the market value of the property by 25%.

On December 17, 2008, Dubuc filed an amended complaint, adding Michael Rosati as a defendant. Michael Rosati represented the Township in Dubuc's suit. Dubuc sued Rosati in his

---

[1]*See Dubuc v. Twp. of Green Oak*, 406 F. App'x 983 (6th Cir. 2011) (affirming the district court's grant of summary judgment for Township defendants on Dubuc's zoning claim); *Dubuc v. Green Oak Twp.*, 312 F.3d 736 (6th Cir. 2002) (affirming the district court's dismissal of Dubuc's § 1983 claim); *see also Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610 (6th Cir. 2003); *Dubuc v. Parker*, 168 F. App'x 683 (6th Cir. 2006).

individual capacity under § 1983, alleging that after Dubuc filed his complaint against the Township, Dubuc was "subjected to acts of retaliation" that were based on Rosati's legal advice. Specifically, he alleged that after he filed the lawsuit his requests for building permits were rejected by the Township. Dubuc claimed that he was told that "no further permits could be issued for the subject property pursuant to the advice of Township Attorney Michael Rosati," and that "if he had any questions as to why permits could not be issued that [he] should call Michael Rosati." Dubuc alleged that Rosati "was delegated the authority to control the application process," and that "Rosati's legal advice was unconstitutional and it violated Plaintiffs' federally secured rights." The court granted Dubuc leave to amend his complaint, but stated that "should actual vexatiousness or similar bad faith . . . be later provably revealed, a corresponding motion for sanctions may well be appropriate."

In response, the Township filed a motion for reconsideration, arguing that the court should have denied Dubuc leave to amend because his amendment was futile and in bad faith.

The court denied the motion. It noted that there was a possibility that Dubuc could prove that Rosati had acted under color of state law, even though Rosati was a private attorney, if his actions could be described as "'properly attributable' to the state." Further, the court noted, it had instructed Dubuc that it might sanction him if adding Rosati proved to be vexatious or in bad faith.

On February 17, 2009, Rosati was terminated as the Township's attorney, and another attorney was substituted.

On May 22, 2009, Rosati filed a motion for summary judgment. He argued that Dubuc had no evidence that he "ever advised anyone to stop issuing or to delay any permits for the subject property." He also argued that he was entitled to qualified immunity for acts he took as counsel to the township. He argued that the township had issued permits for Dubuc's land on September 5, 2008 and September 9, 2008. He argued that the permits that Dubuc claimed were not issued actually had never been fully applied for—"[t]he Affidavits offered . . . do not establish that Plaintiffs' contractors completed the necessary applications to receive an approval or denial." These permits were indeed issued once the applications were completed—as "recently as January 14, 2009." Rosati argued that there were no outstanding permit requests by Dubuc. He argued that the only evidence Dubuc had that implicated Rosati was "a piece of paper that allegedly had defendant Rosati's telephone number on it, which Mr. Dubuc purportedly received from a township employee after inquiring about the status of a permit . . . which he cannot produce."

Dubuc did not respond to Rosati's motion for summary judgment. Instead, on June 2, 2009, the parties stipulated that the action against Rosati was dismissed with prejudice and with no costs to either party. On June 26, the court dismissed Dubuc's suit as to the remaining defendants.

On July 13, 2009, the Township, Kruszewski, and Hunt filed a motion for sanctions and attorney's fees. The motion did not include mention of Rosati. However, in its response to Dubuc's reply to the motion, the Township stated that Dubuc's decision to add Rosati as a defendant cost the Township additional attorney's fees because it had to retain a new attorney after Rosati withdrew.

On March 11, 2010, the court ordered Dubuc to show cause why he should not be sanctioned under the inherent authority of the court and 28 U.S.C. § 1927.[2]  By way of explanation, the court stated that Dubuc's "pursuit of Rosati, in the midst of his representation of Defendants . . . appear[ed] to reduce to a spurious allegation that an attorney should be liable for the legal advice provided to the client."  Because the claim forced defendants to change defense counsel, adding to their legal expenses, but then was quickly dismissed, the court stated that it had "the appearance of a pure strategic gambit."  The court requested that Dubuc discuss "whether [he was] possessed of any information establishing that Rosati's conduct was fairly attributable to the Township, i.e., Rosati acting as the Township, as opposed to acting merely as the Township's attorney and in that capacity providing advice."

Dubuc responded by arguing that the court's *sua sponte* order "over nine months after this case had been dismissed" was "unusual and unfair."  He provided four pieces of information to support his belief that Rosati retaliated against him: (1) Dubuc's own testimony that the Township told him that "'the Township lawyers said no permits are going to be issued'"; (2) that Rosati was "identified on a written sheet of paper as 'the attorney' to speak to about obtaining a permit"; (3) that the Township put a "moratorium" on issuing permits to Dubuc after he filed this lawsuit; and (4) other contractors "were told" that their applications for permits to work on Dubuc's property could not be granted because of the lawsuit.  Dubuc argued that these pieces of evidence gave him the

_____

[2]The court could not sanction under Rule 11 because defendants failed to comply with the "safe-harbor provision," and it determined that 42 U.S.C. § 1988—for attorney's fees—was not an appropriate vehicle for sanctions.  We need not reach these issues on appeal.

"firm understanding that Michael Rosati was the attorney, or one of the attorneys, who stated 'no permits are going to be issued,' and that the people at the Township who are legally responsible for processing permit applications had placed their decision-making authority in Mr. Rosati's hands." Dubuc also stated that he had decided to dismiss the case against Rosati not because it was meritless, but because the Township had begun granting permits to him again and his damages against Rosati would therefore be "mitigated."

On August 16, 2009, the court sanctioned Dubuc $15,000 under its inherent authority. The court determined that Dubuc had no factual basis to believe that the township had delegated its permit-granting authority to Rosati, nor that Rosati was using any such authority to retaliate against Dubuc. The court determined that Dubuc made the claim in bad faith, either to draw out the litigation or to inconvenience the Township by causing Rosati to withdraw as their counsel. The court determined that any delay in the sanction order would not have caused unfair surprise, prejudice, or piecemeal appeals, particularly because it had warned Dubuc that sanctions were possible. *In re Ruben*, 825 F.2d 977, 981–82 (6th Cir. 1987).

The court also sanctioned, under 28 U.S.C. § 1927, Dubuc's attorney, Eric Christensen, for $5,000. The court determined that Christensen abused the judicial process and needlessly multiplied the proceedings by filing Dubuc's suit against Rosati.

Dubuc filed this timely appeal. Christensen, also appealed, filing a separate brief.

Nos. 10-2130, 10-2443
Dubuc v. Green Oak Township, et al.

*Analysis*

Because this appeal deals with sanctions imposed under two separate theories and on two different actors, we first consider the sanctions imposed on Dubuc and then the sanctions imposed on Christensen.

A

On appeal, Dubuc does not contradict the trial court's version of the facts, nor does he allege that the trial court mischaracterized or omitted facts that would have made his claim against Rosati stronger. Instead, he argues that the court's timing was "unusual and unfair," that the court was wrong to decide that they brought the claim in bad faith, and that imposing sanctions will have a chilling effect on civil-rights plaintiffs.

We review a judge's decision to impose sanctions under his inherent authority for an abuse of discretion. *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). A court may exercise its inherent power to sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when the conduct was "tantamount to bad faith." *Ibid.* (citing *Chambers v. NASCO*, 501 U.S. 32, 45–46 (1991) and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). The three-part test to determine whether sanctions were proper is whether the district court found "(1) that the claims advanced were meritless, (2) that [the party] knew or should have known this, and (3) that the motive for filing suit was for an improper purpose such as harassment." *Ibid.* (citing *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)).

- 7 -

To hold a private party liable under § 1983, a plaintiff must prove that the actor "deprived him of a guaranteed right under color of [state law], and . . . that [his] actions were properly attributable to the state, i.e. that [he] qualified as a state actor." *Kelm v. Hyatt*, 44 F.3d 415, 421 (6th Cir. 1995) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). The Sixth Circuit uses three tests to determine whether a private party's actions are "fairly attributable" to the state: the public-function test, the state-compulsion test, and the symbiotic-relationship or nexus test. *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007) (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). The public-function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The state-compulsion test requires "proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly to take a particular action so that the choice is really that of the state." *Amer. Postal Workers Union , Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). The nexus test "requires a sufficiently close relationship between the state and the private actor so that the action taken may be attributed to the state." *Ibid.*

Dubuc fails to prove, or even to provide plausible evidence for, any of the exceptions to the general rule that a private party is not liable under § 1983. He failed to provide evidence that Rosati did anything other than advise the Township. The public-function test was not met, because there is no evidence that Rosati was exercising permit-granting power other than Dubuc's bald assertion. The state-compulsion test was not proved—there was no evidence presented that the Township encouraged or coerced Rosati to grant or deny Dubuc a permit. Finally, the nexus test was not made

out because, though as a Township attorney Rosati may have had the requisite close relationship with the Township, there was simply no evidence that Rosati took any action. Providing legal advice is not an action that can be attributed to the state. It is by its nature separate from and outside the state. Dubuc provided no evidence that Rosati's actions were properly attributable to the Township. Therefore, the district court did not abuse its discretion when it found that Dubuc's claim against Rosati was meritless.

Next, it was not an abuse of discretion for the court to determine that Dubuc knew or should have known that filing a claim against Rosati was meritless. First, Mr. Dubuc is an attorney. He is or should be familiar with the exposure to liability a private attorney bears under § 1983. If not, he certainly possesses the rudimentary legal skills necessary to find out. Dubuc either knew or should have known that Rosati could not be held liable under § 1983.

The court also did not abuse its discretion when it determined that Dubuc sued Rosati in bad faith. Both Dubuc, an attorney, and his lawyer either knew or should have known that there was no basis for holding Rosati, a private attorney, liable under § 1983. They, in fact, indicated, by opting to dismiss the claim rather than respond to Rosati's summary-judgment motion, that they knew the claim was frivolous. Further, Dubuc caused both harassment and delay because he caused the Township to be divested of its primary counsel and forced it to find new counsel. It is not speculative to infer that his motives were to bring about the result that was achieved. It was thus not an abuse of discretion to find that Dubuc filed the complaint for the bad-faith purpose of causing harassment and delay.

Based on the aforementioned reasons, the court did not abuse its discretion when it sanctioned Dubuc under its inherent power.[3]

B

On appeal, Christensen's primary argument is that the district court abused its discretion when it sanctioned him because he insisted that Dubuc sign a "verified" complaint against Rosati. He argues that meant that he "relied upon the verified facts provided by the Dubucs and [the district judge] acknowledged that the complaint, as alleged, set forth a valid claim." He also argues that the district court abused its discretion because it did not detail how or when he would have been aware that Dubuc's claim against Rosati was frivolous.

We review the imposition of sanctions under § 1927 for an abuse of discretion. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996).

Section 1927 provides:

---

[3]Dubuc also argues on appeal that the court's delay in sanctioning him was unfair and unusual. He complains that had he known that the court was considering sanctions, as opposed to merely dismissing the claim without costs, that he would have extended discovery and gathered more evidence against Rosati. Dubuc's argument is meritless. The court clearly warned him at the time that he amended his complaint that sanctions might be warranted if his claim against Rosati turned out to be meritless. Dubuc also objects that the court delayed too long in imposing sanctions, but this argument is also meritless. Courts have great discretion in determining when to impose sanctions. *See, e.g.*, *Chambers*, 501 U.S. at 56 (stating that sanctions may be imposed "years after a judgment on the merits"); *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 394 (6th Cir. 2009) (affirming sanctions levied seven years after the court requested briefing on sanctions).

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. This circuit has construed the statute to provide for sanctions when an attorney "knew or should have known that a claim pursued was frivolous, or that his litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1985); *see also Parrott v. Corley*, 266 F. App'x 412, 414 (6th Cir. 2008) (following *Jones*). Sanctions under § 1927 are also appropriate where there has been "'some conduct on the part of the subject attorney that trial judges . . . could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Parrott*, 266 F. App'x at 414 (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). Section 1927 sanctions may be imposed *without* a finding that the lawyer subjectively knew that his conduct was inappropriate. *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997). However, the conduct must exceed "simple inadvertence or negligence that frustrates the trial judge." *Ibid.* (internal quotation marks removed).

The district court did not abuse its discretion when it sanctioned Christensen under § 1927. As the court noted, there was no factual basis for Dubuc to believe that Rosati was liable under § 1983, making his claim meritless. Due to this fact, it does not appear important whether Dubuc filed a "verified" complaint or not. The issue is not Christensen's subjective perception of whether or not Dubuc was being truthful in his belief that Rosati retaliated against them while acting under color

of state law. The issue is whether there was any basis in fact for the claim. There was not. Because there was no basis for the claim, the action of suing Rosati, the lead attorney for the Township, multiplied the proceedings vexatiously and unreasonably—it forced Rosati to withdraw as the Township attorney and the Township to substitute an attorney. Substituting a new attorney also added to the Township's expenses.

*Conclusion*

The district court's sanctions against the Dubucs and Christensen are AFFIRMED.